[No. C042956. Third Dist. Feb. 3, 2005.]

JULIE OSGOOD, Plaintiff and Respondent, v.
THOMAS LANDON, Defendant and Appellant.

426

428

COUNSEL

David I. Abrams for Defendant and Appellant.

Laura A. Raycraft for Plaintiff and Respondent.

OPINION

**MORRISON, J.**—Thomas Landon (father or Tom) appeals from an order in favor of Julie Osgood (mother or Julie) that denied father's motion to grant him physical custody of their son, Daniel James Landon (Daniel or Danny), which was based upon mother's proposed relocation from California to Tennessee. Father argues the court incorrectly applied the "changed circumstances" (rather than the "best interest of the child") standard to the proposed move, and that the error led to denial of his motion. For the reasons stated below, we shall conclude the trial court properly required father to establish that mother's move would cause detriment to Daniel; father failed to establish such detriment; and substantial evidence supports the court's order. Therefore, we shall affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Father and mother were never married. Daniel was born on July 30, 1998. On July 31, 2001, mother filed a petition to establish paternity and named

father as respondent. In papers filed the following day, mother submitted a declaration of paternity wherein father admitted he was Daniel's father.

Mother filed a request to enter default on September 12, 2001, and a default judgment was entered thereon on October 3, 2001. The judgment granted mother sole legal and physical custody of Daniel, with reasonable visitation to father.

Pursuant to a stipulation filed October 10, 2001, the parties agreed that they share joint legal custody of Daniel, and father would have visitation on the first and third weekends of every month. The stipulation did not mention any change regarding physical custody of Daniel.

On February 6, 2002, father filed a motion to modify visitation and to change custody to him based on mother's having made plans to move to Tennessee to accept a job offer. According to father's declaration, mother had told him that she had heard a song on the radio one evening and it made her think Tennessee would be a good place to live. Father declared that mother had admitted that she knew no one in Tennessee and that she lost her job in California because of her drinking. According to father's declaration, "Julie has gone too far. I want to have this court consider giving me the custody of my son. I have a great house for him where I have lived for years. He will have his own bedroom. My two sons are here a lot, and I have daughters too. I have visitation with all of them. My employment hours are such that I am home in the daytime usually and work evenings and have had the same person provide child care and she is willing to do this now. I will never deprive Julie of her visitation with her son because I know a child needs the love [of] his mother too."

In her responsive declaration, mother declared that she had been recruited by Dennis Jackson, one of her prior employment supervisors who had moved to Tennessee to undertake employment as a vice-president and director of procurement for Union Planters National Bank (Union Planters) based in Memphis.

According to a statement from Jackson, prior to commencing employment with Union Planters, he was the director of purchasing at Imperial Sugar Company (Imperial). His declaration stated: "Julie worked for me at Imperial as a Purchasing Specialist[] responsible for the management of our packaging inventory. Upon arriving at Union Planters, I recruited Julie to join the team at Union Planters because of her knowledge and experience. She was one of my key performers that helped the team achieve our objectives. The new opportunity at Union Planters will allow her to grow with an organization that is profitable and growing. She will be a Purchasing Analyst, which is a key

role in the group. [¶] My wife, and children have moved to Memphis as well. Our family knows Julie through the opportunity to work with her [at] Imperial."

According to a letter of recommendation submitted by Stanley Strickland, the comptroller of the Imperial plant in Tracy, "I have found Julie to be an energetic and enthusiastic worker. She is eager to learn and ready to lend support to others where needed. Her intelligence and dedication has been amply demonstrated in her accomplishments while working for Spreckels. [¶] It is with mixed emotions that I write this letter because I value highly Julie's contribution to our company. I am certain she will be an outstanding addition to any organization."

Also attached to mother's opposition papers was a letter outlining the results of a chemical dependency screening on mother that had been conducted by Leslie Hill-Sokol, a "master addictions counselor" with the National Board of Addiction Examiners. Hill-Sokol concluded that mother was not an alcoholic, that her drinking patterns in the past had resembled those of an adolescent, and that she had stopped drinking.

The court appointed Janelle Burrill, Ph.D., to conduct an examination of the parties pursuant to Family Code section 3111.[1] Burrill's report recommended that legal custody remain joint but that father be given primary physical custody of Daniel. Burrill's report noted that Daniel was attached to both parents, who had shared parenting time of Daniel; Daniel was distressed and angered by mother's move to Tennessee; father had attempted to maintain contact with minor, while mother's relocation without a viable plan for Daniel to maintain regular contact with father was not in Daniel's best interest; mother's relocation also deprived Daniel of access to siblings and relatives in California. (§ 3111.)

---

[1] Family Code section 3111 provides: "(a) In any contested proceeding involving child custody or visitation rights, the court may appoint a child custody evaluator to conduct a child custody evaluation in cases where the court determines it is in the best interests of the child. The child custody evaluation shall be conducted in accordance with the standards adopted by the Judicial Council pursuant to Section 3117, and all other standards adopted by the Judicial Council regarding child custody evaluations. If directed by the court, the court-appointed child custody evaluator shall file a written confidential report on his or her evaluation. At least 10 days before any hearing regarding custody of the child, the report shall be filed with the clerk of the court in which the custody hearing will be conducted and served on the parties or their attorneys, and any other counsel appointed for the child pursuant to Section 3150. The report may be considered by the court.

"(b) The report shall not be made available other than as provided in subdivision (a). . . .

"(c) The report may be received in evidence on stipulation of all interested parties and is competent evidence as to all matters contained in the report."

A contested hearing was held at which father, mother, Burrill, and Hill-Sokol testified (the change of custody hearing). The reporter's transcript is not included with the record on appeal, so we must rely on the court's decision to summarize the testimony adduced at the hearing. The decision states in part: "Janelle Burrill, Ph.D., testified Julie fails to recognize the significance of her move with Danny to Tennessee, that Julie lacks an understanding of child development, that Julie has a history of alcohol abuse, and that she failed to promote frequent contact between Danny and his father. Dr. Burrill recommended Tom be awarded primary physical custody of Danny because (1) he has a strong bond with Danny, (2) he is willing to allow frequent visitation to Julie, (3) Danny is attached to his siblings, and (4) Tom will promote Danny's best interests.

"Leslie Hill-Sokol, a counselor with the Cameron Park Counseling Center, testified she performed an alcohol and chemical dependency assessment of Julie. In Ms. Hill-Sokol's opinion, Julie has no alcohol dependency or abuse issues and has not consumed alcohol in the last year.

"Julie testified her former California employer, Spreckels Sugar Company, filed Chapter 11 bankruptcy in 2000. Because she was concerned about job security and because Tom failed to make child support payments in October, November, and December 2001, she decided in January[] 2002 to accept an employment offer in Tennessee, working for a former supervisor at Spreckèls, increasing her salary from $25,000 per year to $45,000 plus a 10% bonus.

"Tom testified he has never tested positive for drugs or alcohol in connection with his employment as a truck driver for PMT Trucking. In addition to four-year-old Danny, he has four other children, Lisa (age 18), Tom (13) and Kevin (11) who reside with Tom and visit their mother every other weekend, and Ashley (7) who resides with her mother and spends every other weekend and one mid-week visit with Tom. A responsible neighbor watches the children during his evening work hours. Tom testified Julie would not allow Thanksgiving and birthday visits with Danny, but if he were awarded primary physical custody, he would allow liberal parenting time by Julie."

The court determined that Tom had the burden to establish detriment by reason of mother's physical custody of Daniel, and that he had not demonstrated that mother's relocation to Tennessee caused any detriment. The court wrote: "The court finds the default judgment dated October 3, 2001 awarded legal and physical custody of Danny to Julie. No evidence was presented to indicate the default judgment was considered a temporary order, and no motions to set aside the default and default judgment have been filed. Although joint legal custody was awarded to both parents pursuant to a

stipulation dated October 10, 2001, the fact remains the award of physical custody to Julie has never been modified. As such, Tom has the substantial burden of showing Julie's move-away to Tennessee would cause detriment to Danny. No such showing has been made. Additionally, the court finds Julie's move to Tennessee was neither whimsical nor in bad faith, but instead employment related and made in good faith without any intention to frustrate Tom's contact with Danny."

The court determined that mother would have primary responsibility for the care and custody of Danny and that he would reside primarily with mother. In the absence of any proposed parenting plans submitted by the parties, the court awarded father visitation for the first week of each month, with transportation to be mutual. If the parties found the trip to be too arduous every month, then Danny would visit father every other month, with father traveling to Tennessee on off months over a long weekend or another time to which the parties could mutually agree. During the summer months, Danny would stay with father for the first two weeks of each month. Following Danny's enrollment in school, he would be in father's care and custody for an eight-week period commencing the Friday before Father's Day.

## DISCUSSION

Father argues the court applied the incorrect standard in reviewing mother's proposed move to Tennessee. He argues that the change of custody hearing was the legal equivalent of an initial custody hearing because there had never been such a hearing and the judgment awarding custody to mother was by default only. As such, the court should have applied the best interest of the child test, which applies to initial custody determinations, rather than the changed circumstances test, which applies where there has been a final custody determination. In support of this position, father relies upon *Montenegro v. Diaz* (2001) 26 Cal.4th 249, 255 [109 Cal.Rptr.2d 575, 27 P.3d 289] (*Montenegro*), which, in father's view, "holds that unless the parties [*sic*] stipulation shows a clear, affirmative indication that the parties intended for the stipulation to be a final adjudication of their rights the 'best interest' standard applies, not the changed circumstances standard."

Analysis of the *Montenegro* decision undermines father's reliance upon it. In *Montenegro*, the parties had entered a series of stipulations regarding custody, which were approved by the family court. (*Montenegro, supra,* 26 Cal.4th at pp. 252–253.) Following a contested hearing, the family court changed custody of the parties' child. (*Id.* at p. 254.) The family court applied

the best interest of the child test, embodied in section 3111. (*Montenegro, supra,* at p. 254.) The Court of Appeal reversed, concluding that the family court should have applied the changed circumstances test because the stipulations had been reduced to custody orders by the family court. (*Ibid.*) The Supreme Court reversed the Court of Appeal, however. The Supreme Court initially rejected the argument that stipulated custody orders could not constitute final custody determinations. The court stated: "Nothing in our statutes or case law supports this contention, and we see no basis for treating a permanent custody order obtained via stipulation any differently from a permanent custody order obtained via litigation." (*Montenegro, supra,* 26 Cal.4th at p. 257.) The court did not apply this rule in the case before it, however, because neither the stipulations nor the minute orders "contained a clear, affirmative indication that the parties intended it to be a final judicial custody determination." (*Id.* at p. 259.)

■ *Montenegro, supra,* 26 Cal.4th 249 might have been of some assistance to father had this case involved a stipulated custody order. It does not, however. The custody order in effect at the time of the change of a custody hearing was the final judgment granting sole physical custody to mother, as the family court correctly found. *Montenegro,* by its very terms, does not apply where there has been a final custody order, whether by a judgment following a contested hearing, or a default judgment, as here. Justice Brown made this clear for a unanimous *Montenegro* court: "Under California's statutory scheme governing child custody and visitation determinations, the overarching concern is the best interest of the child. The court and the family have 'the widest discretion to choose a parenting plan that is in the best interest of the child.' (Fam. Code, § 3040, subd. (b).) When determining the best interest of the child, relevant factors include the health, safety and welfare of the child, any history of abuse by one parent against the child or the other parent, and the nature and amount of contact with the parents. (§ 3011.) [¶] . . . [¶]

■ "Although the statutory scheme only requires courts to ascertain the 'best interest of the child' (e.g., §§ 3011, 3020, 3040, 3087), this court has articulated a variation on the best interest standard once a final judicial custody determination is in place. Under the so-called changed circumstance rule, a party seeking to modify a permanent custody order can do so only if he or she demonstrates a significant change of circumstances justifying a modification. ([*In re Marriage of*] *Burgess* [(1996) 13 Cal.4th 25,] 37 [51 Cal.Rptr.2d 444, 913 P.2d 473] [(*Burgess*)].) According to our earlier decisions, '[t]he changed-circumstance rule is not a different test, devised to supplant the statutory test, but an adjunct to the best-interest test. It provides,

in essence, that once it has been established that a particular custodial arrangement is in the best interests of the child, the court need not reexamine that question. Instead, it should preserve the established mode of custody unless some significant change in circumstances indicates that a different arrangement would be in the child's best interest. The rule thus fosters the dual goals of judicial economy and protecting stable custody arrangements.' (*Burchard* [*v. Garay* (1986)] 42 Cal.3d [531, 535 [229 Cal.Rptr. 800, 724 P.2d 486].).]

■ "In *Burchard*, we held that the changed circumstance rule applies 'whenever [final] custody has been established by judicial decree.' (*Burchard*, *supra*, 42 Cal.3d at p. 535, fn. omitted.) Our holding followed the majority of jurisdictions (*ibid.*), which applied the changed circumstance rule 'regardless of whether the initial determination of custody resulted from the parents' agreement, *from a default judgment,* or from litigation.' [Citation.] We also expressly disagreed with the minority of jurisdictions that applied the rule only when custody was determined by the court through an adversarial factfinding process. (See *Burchard*, at p. 535.) . . . Our subsequent decision in *Burgess* further confirmed that the changed circumstance rule applied after any final 'judicial custody determination.' (*Burgess*, *supra*, 13 Cal.4th at p. 37.)" (*Montenegro, supra*, 26 Cal.4th at pp. 255–257, italics added.)

As the italicized language indicates, father is simply incorrect when he asserts that the best interest of the child test applies where one party seeks to modify a final custody order embodied in a default judgment.

■ The correct test to be applied where a custodial parent seeks to relocate was summarized recently in *In re Marriage of La Musga* (2004) 32 Cal.4th 1072 [12 Cal.Rptr.3d 356, 88 P.3d 81]: "[T]he noncustodial parent bears the initial burden of showing that the proposed relocation of the children's residence would cause detriment to the children, requiring a reevaluation of the children's custody. The likely impact of the proposed move on the noncustodial parent's relationship with the children is a relevant factor in determining whether the move would cause detriment to the children and, when considered in light of all of the relevant factors, may be sufficient to justify a change in custody. If the noncustodial parent makes such an initial showing of detriment, the court must perform the delicate and difficult task of determining whether a change in custody is in the best interests of the children." (*Id.* at p. 1078.)

In the present case, the court concluded that father had failed to establish any detriment to Daniel should mother be permitted to move to Tennessee.

The court found that mother's move was contemplated in good faith and to secure a substantial increase in income, which would inure to Daniel's well-being. The court discounted Burrill's concerns about mother's parenting skills, alcohol abuse, and willingness to have Daniel visit father.

Father asserts, in a conclusory manner, "[e]ven a cursory review of [Burrill's section 3111] evaluation reveals that it is not in the best interests of Danny to remain in Tennessee."

Father misapprehends his burden on appeal. To begin with, father's conclusionary assertions are wholly inadequate to tender a basis for relief on appeal. (*Opdyk v. California Horse Racing Bd.* (1995) 34 Cal.App.4th 1826, 1831, fn. 4 [41 Cal.Rptr.2d 263] [waiver for failure to head argument as required by Cal. Rules of Court, rule 15(a)]; *Troensegaard v. Silvercrest Industries, Inc.* (1985) 175 Cal.App.3d 218, 228 [220 Cal.Rptr. 712] [error waived because no argument, citation to authorities, or reference to record]; *Atchley v. City of Fresno* (1984) 151 Cal.App.3d 635, 647 [199 Cal.Rptr. 72] [lack of authority or analysis constitutes waiver].)

In addition, the record does not include a reporter's transcript of the change of custody hearing, which severely impairs analysis of father's assertions. " 'A judgment or order of the [trial] court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent . . . .' (Orig. italics.) [Citation.]" (*Rossiter v. Benoit* (1979) 88 Cal.App.3d 706, 712 [152 Cal.Rptr. 65].) It is the appellant's affirmative duty to show error by an adequate record. (*Erikson v. Sullivan* (1947) 81 Cal.App.2d 790, 791 [185 P.2d 31].) "A necessary corollary to this rule [is] that a record is inadequate, and appellant defaults, if the appellant predicates error only on the part of the record he provides the trial court, but ignores or does not present to the appellate court portions of the proceedings below which may provide grounds upon which the decision of the trial court could be affirmed." (*Uniroyal Chemical Co. v. American Vanguard Corp.* (1988) 203 Cal.App.3d 285, 302 [249 Cal.Rptr. 787].)

In any event, from what appears, the trial court did not abuse its discretion in denying father's motion on the basis that he had failed to establish detriment to Daniel by reason of mother's relocation. In reviewing the sufficiency of the evidence, we consider the record in the light most favorable to the prevailing party, giving that party the benefit of every reasonable inference, and resolving all conflicts in his or her favor. (*In re Marriage of Mix* (1975) 14 Cal.3d 604, 614 [122 Cal.Rptr. 79, 536 P.2d 479].) The testimony of a single witness, even a party to the dissolution, may

be sufficient to sustain the trial court's findings. (*Ibid.*) We will affirm if the trial court's judgment is right on any theory of law applicable to the case. (*Davey v. Southern Pacific Co.* (1897) 116 Cal. 325, 329 [48 P. 117].)

■ We have no reason to question the court's findings that mother decided to move to Tennessee in good faith and without any intent to frustrate father's visitation with Daniel. The relocation resulted in a substantial increase in income for mother, as well as superior job stability (inasmuch as her previous employer had filed for bankruptcy).

Burrill's section 3111 report (and apparently her testimony) had expressed concerns with possible disruption of the relationships between Daniel and his father, half siblings and relatives, mother's possible unwillingness to promote these relationships, and mother's possible alcoholism. On the last point, the court concluded, on the basis of Hill-Sokol's testimony, that this was not an issue. With respect to the issue of mother's perceived unwillingness to promote contact between Daniel and his father and relatives, the court's proposed visitation schedule provided for substantial contact, so as to minimize any disruption. Those relationships were already disrupted simply because father and mother resided in different households. The court's proposed plan provided for visits of a substantial nature that were not inconsistent with the existing visitation schedule prior to mother's relocation. In light of these facts, the court properly could conclude that Burrill's concerns were overstated and that the alleged detriment to Daniel was more illusory than real. The record presented for our review does not persuade us to conclude otherwise.

Father's final contention, also asserted in summary form, is that this case is governed by *In re Marriage of Campos* (2003) 108 Cal.App.4th 839 [134 Cal.Rptr.2d 300], where the father sought to modify a child custody and visitation order relating to his sons after their mother announced she would move with them to a town approximately two hours away by car. After the family court in *Campos* determined that the mother was not acting in bad faith, it refused to consider whether the move would cause detriment to the children. The *Campos* court held this was error, and remanded so that the family court could consider that issue. (*Id.* at p. 844.) In the present case, by contrast, the court considered both the reasons for mother's move and possible detriment to Daniel. The *Campos* case is therefore inapposite.

## DISPOSITION

The order denying father's motion to modify physical custody of Daniel is affirmed.

Blease, Acting P. J., and Raye, J., concurred.