Filed 10/2/23  Happy Kids Food v. Happy Kids Nutrition CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| HAPPY KIDS FOOD, INC., | |
| Plaintiff, Cross-defendant and Respondent, | G060808 |
| v. | (Super. Ct. No. 30-2016-00889297) |
| HAPPY KIDS NUTRITION, INC. et al., | O P I N I O N |
| Defendants and Appellants; | |
| SHAHER ADASSI, | |
| Defendant, Cross-complainant and Appellant; | |
| ASHRAF SULAIMAN, et al., | |
| Cross-defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, Richard Y. Lee, Judge.  Affirmed.

The Appellate Law Firm, Aaron Myers; Mark Kuntze for Defendants, Cross-complainant and Appellants.

Diem Law and Robin L. Diem for Plaintiff, Cross-defendant and Respondent Happy Kids Food.

Loe Law Group and David C. Loe for Cross-defendants and Respondents Ashraf Sulaiman, Mohamad Odeh, and Best Baby Love Wholesale.

\*          \*          \*

Happy Kids Nutrition, Inc. (HK Nutrition), Majid Adassi, and Wijdan Adassi, as successor-in-interest to the estate of Shaher Adassi (collectively Appellants),[1] appeal from a judgment against them.  The trial court, sitting as trier of fact, found them jointly and severally liable to Happy Kids Food, Inc. (HK Food) for unpaid goods and determined Shaher did not have any ownership interest in HK Food.  Appellants contend the court failed to make certain factual findings, made other findings that were not supported by substantial evidence, and awarded excessive damages.  We affirm.

FACTS

In 2015, Shaher and Ashraf Sulaiman began discussions about creating a new entity named HK Food.  They agreed generally to contribute $326,000 each for a 50/50 interest in HK Food. Specific terms of the agreement were hotly disputed at trial, including the type of consideration (money, equipment, goodwill, etc.) each was to contribute.

In December 2015, HK Food was formed.  It was a wholesale business providing children's food products to stores.  It took over a warehouse occupied by HK Nutrition.  HK Nutrition's shares were owned by Shaher and Majid.  HK Nutrition had

---

[1]          For clarity, we will refer to members of the Adassi family by their first name.  Their names, as well as those of other individuals, are spelled multiple ways in the appellate record and briefs.  We use what we think is the most likely spelling for each person.  For Majid, we use the spelling from his answer to the operative complaint.  For Shaher, who passed away before trial, we use the spelling from his death certificate.

existing customers, i.e., stores that ordered children's food products. Some stores were owned by or affiliated with HK Nutrition, Shaher, or Shaher's children–Majid, Magda, Adassi, and Yasser.[2] Those stores, along with HK Nutrition's other customers, became customers of HK Food.

By May 2016, things went south between Sulaiman and Shaher concerning HK Food. Around May 20, the HK Food warehouse was "emptied" of product. Three weeks later, Mohamad Odeh,[3] HK Food's chief operating officer, left to become the chief operating officer of a company owned by Sulaiman, Best Baby Love Wholesale, Inc. (BBL Wholesale).

HK Food sued first, seeking payment for nearly $240,000 of product delivered to 14 stores affiliated with HK Nutrition. HK Food sued HK Nutrition, Shaher, his daughter Magda, and his sons Magid, Adassi, and Yasser. According to the original complaint, HK Nutrition co-owned and co-operated each store with at least one Adassi family member such that HK Nutrition and the respective family members were liable for their stores' unpaid invoices. These invoices underlie all causes of action in the original complaint.

Shaher cross-complained against HK Food, Sulaiman, Odeh, and BBL Wholesale (collectively Respondents). Shaher had two main grievances. First, Shaher alleged Sulaiman mismanaged HK Food, engaged in self-dealing, and converted HK Food's assets to his own businesses, including BBL Wholesale. These actions underlie Shaher's claims of dissolution and accounting, breach of fiduciary duty of director to shareholder, and negligence. Second, Shaher brought shareholder derivative claims against Sulaiman for negligence and breaches of fiduciary duty for unlawful distribution

---

[2]  We use the spelling Magda gave at trial and the spellings Adassi and Yasser provided in answering the operative complaint.

[3]  We use the spelling Odeh gave at trial.

3

of corporate assets and usurpation of corporate opportunity, and alleged conversion against all cross-defendants.

HK Food amended its complaint, in part, to refute Shaher's 50% ownership claim of HK Food. The second amended complaint, the operative pleading, broke down claims into two categories: "product purchase" and "corporate organization." The product-purchase claims included breach of oral contract, breach of implied-in-fact contract, book account, breach of the covenant of good faith and fair dealing, quantum valebant, and indebitatus assumpsit. All six causes of action boiled down to one general allegation: HK Nutrition, Shaher, and his children failed to pay their respective stores' invoices. The corporate-organization claims included two claims for breach of contract, two for fraud, indebitatus assumpsit, and declaratory relief. These causes of action alleged Shaher hadn't paid for—and thus wasn't entitled to—shares of HK Food.

Before trial, Yasser filed for bankruptcy and was dismissed from the case. At the four-day bench trial, Odeh, HK Food employee Carolina Hormachea, Magda, and Majid testified. The trial court also considered dozens of exhibits, excerpts from Sulaiman's deposition transcript, and select responses to requests for admissions.

After taking the matter under submission, the trial court issued a "Tentative Ruling/Statement of Decision." It was received by the parties on the date it was issued, July 15, 2021, and "be[came] the final ruling of the [c]ourt" on that day.

In the statement of decision, the trial court made credibility findings: Hormachea and Odeh were credible; Majid was not. On the operative complaint, the court found Appellants, jointly and severally, owed HK Food $335,552.41. It found Appellants jointly and severally liable to HK Food for the unpaid invoices connected to their respective stores and for payments that had been diverted from HK Food to HK Nutrition. But it determined HK Food had failed to prove Shaher's agreement to repay HK Food about $187,000 for payments it made on his accounts payable. On the cross-complaint, the court found against Shaher on all claims. The court found Shaher had no

4

ownership interest in HK Food because he did not contribute $326,000 of money, goods, or other value; was not a shareholder of HK Food for this reason; and thus could not prevail on his cross-complaint. Finally, the court answered eight controverted issues submitted jointly by the parties.

Nineteen days after the statement of decision was issued, Appellants filed a request for statement of decision identifying 20 additional controverted issues. Two days after that, they filed 28 objections to the statement of decision.

The trial court denied as moot Appellants' request for another statement of decision. As for the objections, the court responded to Appellants' complaint that it had not made a finding either way on their claim of a $75,618.60 offset. The court stated the evidence did not support any offset. The court did not respond specifically to the other 27 objections and noted that most of them were "reargu[ments of] the merits of the case, which are improper and unhelpful."

After entry of judgment, Appellants moved for new trial. (Code Civ. Proc., § 657(1), (3), (4), (6), (7).) The court denied the motion in its entirety. It further made additional findings about the alter-ego claim. The court stated it "did not misunderstand the burden of proof or the law as it relates to alter ego. Rather, the court disagrees with defendants' view of the evidence and the reasonable inferences to be drawn from such evidence." The court then found HK Food had proven Shaher and Majid were also liable under an alter ego theory.

DISCUSSION

Appellants argue the trial court erred in five ways: (1) failing to find Shaher had a 50% partnership share in HK Food; (2) finding without sufficient evidence that Majid co-owned certain stores; (3) awarding damages to HK Food for its unpleaded and

5

unsupported claim of diverted payments; (4) finding Appellants were alter egos of one another; and (5) refusing to award Appellants certain offsets.[4] We are unpersuaded.

I. *Standard of Review*

We begin with a bedrock principle of appellate law—which we will revisit in this opinion: A trial court's judgment "is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness." (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133 (*Arceneaux*).) The appellant has the "affirmative duty to show error by an adequate record." (*Osgood v. Landon* (2005) 127 Cal.App.4th 425, 435 (*Osgood*).) "'[A] record is inadequate, and appellant defaults, if the appellant predicates error only on the part of the record he provides the trial court, but ignores or does not present to the appellate court portions of the proceedings below which may provide grounds upon which the decision of the trial court could be affirmed.'" (*Ibid.*) And "'[u]nder the doctrine of implied findings, the reviewing court must infer, following a bench trial, that the trial court impliedly made every factual finding necessary to support its decision.'" (*Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981 (*Thompson*).)

On appeal from a judgment based upon a statement of decision, we review questions of law de novo and findings of fact for substantial evidence. (*Thompson*, *supra*, 6 Cal.App.5th at p. 981.) "'Substantial evidence means evidence which is of ponderable legal significance—evidence which is reasonable in nature, credible and of solid value'" (*Lui v. City and County of San Francisco* (2012) 211 Cal.App.4th 962, 969 (*Lui*).) "'"[A]ny conflict in the evidence or reasonable inferences to be drawn from the facts will be resolved in support of the determination of the trial court decision.'"" (*Ibid.*) "'We may not reweigh the evidence and are bound by the trial court's credibility

---

[4] Although the appeal is taken from the judgment on the operative complaint and cross-complaint, Appellants do not separately address any issue raised in the cross-complaint that is not already subsumed in the complaint. Accordingly, neither do we.

determinations. . . . The testimony of a single witness may be sufficient to constitute substantial evidence.'" (*Ibid.*)

II.     *Incomplete Record on Appeal*

An incomplete record of the underlying proceedings limits our review of this appeal. Appellants opted for a reporter's transcript, but there was no court reporter on the first day of trial and they didn't obtain a suitable substitute, such an agreed or settled statement, for that day. (Cal. Rules of Court, rules 8.134, 8.137.) They chose to proceed with a clerk's transcript, but they didn't ask for any of the dozens of trial exhibits to be included. We located copies of some trial exhibits elsewhere in the appellate record but were not entirely successful. Those we could not find we could not consider. (See *Padideh v. Moradi* (2023) 89 Cal.App.5th 418, 430, fn. 6 [exercising discretion not to consider trial exhibits that were not transmitted for appellate review.) To the extent a missing exhibit may be relevant to the disposition of this appeal, we have noted it.

III.    *Shaher's Partnership Claim*

The trial court found Shaher hadn't given enough consideration for, and thus was not entitled to, any shares of HK Food; the shares were never issued to him; and even if they had been issued, they would be void for lack of consideration. Instead of tackling this ruling, Appellants attempt to reframe the issue. According to them, the court found "the parties agreed to form a *partnership*" but that Shaher and his children "were not entitled to a 50% ownership share in the [HK Food] *partnership*." (Italics added.) Appellants contend the court committed legal error when it deprived Shaher of his partnership interest. But that's not what the court found or did.

Because Appellants did not adequately plead the partnership theory at the trial level, they may not now complain that the trial court failed to address it. "'The rule is well settled that the theory upon which a case is tried must be adhered to on appeal. A party is not permitted to change his position and adopt a new and different theory on appeal. To permit him to do so would not only be unfair to the trial court, but manifestly

7

unjust to the opposing litigant.' [Citations.] And this rule 'is to be stringently applied when the new theory depends on controverted factual questions whose relevance thereto was not made to appear at trial.'" (*Koehl v. Verio, Inc.* (2006) 142 Cal.App.4th 1313, 1339.)

The HK Food partnership theory was not identified in the pleadings or as a controverted issue at trial. To the contrary, Shaher's cross-complaint alleged HK Food was a "close corporation" and Shaher was a "director," "officer," and/or "shareholder" of HK Food, "holding 50% of common stock." Indeed, Appellants included "an affirmative defense of corporate veil" in their answer to the operative complaint. Although the parties had raised the "ownership" of HK Food as a controverted issue, Appellants never asked the court to find the existence of a partnership. Nor did Appellants object that the court failed to make specific findings as to Shaher's partnership interest.[5]

Appellants correctly note the partnership theory was mentioned in trial testimony and their closing argument. But while these references might permit the trial court to consider and rule on the theory,[6] Appellants provide no authority compelling the court to do so. Simply put, Appellants did not place the court or HK Food on sufficient notice it was advancing a partnership theory at trial. Even if the trial evidence could support such a finding, "a ruling by this court that a partnership could be inferred from the evidence would deny [HK Food its] day in court relative to this issue." (*Halperin v.*

---

[5] The only mention of a "partnership" was in objection no. 26, in which Appellants complained "the court did not make a finding on whether Cross-Defendants provided sufficient evidence to rebut a finding of failing to account for [HK Food]'s corporate property, profits and benefits; or seizing business opportunity for himself; or converting partnership assets for their personal gain."

[6] "'"'Where (1) a case is tried on the merits, (2) the issues are thoroughly explored during the course of the trial and (3) the theory of the trial is well known to court and counsel, the fact that the issues were not pleaded does not preclude an adjudication of such litigated issues and a review thereof on appeal.'"'" (*Cameron v. Las Orchidias Properties, LLC* (2022) 82 Cal.App.5th 481, 502 (*Cameron*).)

8

*Raville* (1986) 176 Cal.App.3d 765, 773 [partnership theory not permitted on appeal when it wasn't pleaded or raised at trial]; see *Heaps v. Heaps* (2004) 124 Cal.App.4th 286, 293 [trial court need not issue findings on defense identified as controverted issue in request for statement of decision where defense not asserted in pleadings].)

For the same reason, Appellants cannot now argue on appeal that Shaher was both a partner and a shareholder of HK Food. At trial, Appellants' counsel argued in closing that it was one or the other:  "So either Shaher's a 50/50 shareholder or he's a 50/50 business partner."

IV.    *Majid's Store Ownership*

Appellants contend insufficient evidence supports the finding Majid co-owned four stores and thus is individually liable for their unpaid invoices. The contention fails for lack of a complete record.

We cannot review a finding for substantial evidence if all pertinent evidence presented at trial isn't included in the record on appeal.  (*Lui*, *supra*, 211 Cal.App.4th at p. 969; *Osgood*, *supra*, 127 Cal.App.4th at p. 435.)  To the extent a partial record does not reveal substantial evidence in support of the judgment, we must presume such evidence was contained in the missing portion.  (*Arceneaux*, *supra*, 51 Cal.3d at p. 1133; *Osgood*, at p. 435.)

Here, Appellants acknowledge the trial court relied on Hormachea's testimony on the issue of store ownership.  The court found her testimony on this issue to be credible, and "[t]he testimony of a single witness may be sufficient to constitute substantial evidence" (*Lui*, *supra*, 211 Cal.App.4th at p. 969).  Missing from our record, however, is a transcript or suitable substitute for the first day of trial—when Hormachea testified on direct examination and began her cross-examination.  Because the record is incomplete, we presume evidence necessary to support the court's finding on store ownership was adduced on the first day of trial.  (*Arceneaux*, *supra*, 51 Cal.3d at p. 1133; *Osgood*, *supra*, 127 Cal.App.4th at p. 435.)

V.    *Diverted Payments*

At trial, HK Food alleged HK Nutrition diverted payments owed to HK Food, by either depositing checks meant to go to HK Food or directing customers to make checks out to HK Nutrition instead of HK Food (the "diverted-payment claim"). The court agreed and found HK Nutrition diverted a total of $63,846.34 owed to HK Food from five customers: Nutritional Fundamental ($18,913.50); Valley Nutrition ($19,838.39); Health Nutrition Mo'men ($2,006.42); Henry and Sherry Stores ($15,315.71); and Rich Eggs ($7,772.32). The court found HK Nutrition, Shaher, and Majid jointly and severally liable for the diverted payments.

Appellants argue this ruling was error for three reasons: (1) the claim was not alleged in the operative complaint or identified in discovery responses and its presentation at trial was a surprise; (2) evidence on the claim should have been excluded pursuant to Appellants' motion in limine; and (3) the court's findings relied upon inadmissible hearsay and thus are not supported by substantial evidence. We are unpersuaded.

First, even though the diverted-payment claim was not raised in the pleadings, Appellants fail to preserve this claim for appeal. "'The general and longstanding rule is that a party must recover on the cause of action he has alleged in his complaint and not on another cause of action disclosed by the evidence. [Citations.] However, the general rule may yield where a case is tried on the theory that a matter is in issue and evidence is received thereon without objection. [Citations.] [¶] "'"It has long been settled law that where (1) a case is tried on the merits, (2) the issues are thoroughly explored during the course of the trial and (3) the theory of the trial is well known to court and counsel, the fact that the issues were not pleaded does not preclude an adjudication of such litigated issues and a review thereof on appeal.'"'"'" (*Cameron*, *supra*, 82 Cal.App.5th at p. 502.)

10

Here, Appellants' briefs do not point to any objection they made at trial that the diverted-payment claim had not been pleaded. To the contrary, the record shows they actively defended against the merits of the claim. Their trial brief acknowledges the claim as an issue to be tried. They made no objection of an unpleaded claim when Odeh and Majid were asked about the diverted checks. And their counsel addressed the claim, without objection, in closing argument. Because no trial objection appears in the record,[7] the claimed error is forfeited. (*Cameron*, *supra*, 82 Cal.App.5th at p. 502.)

Second, Appellants fail to show that evidence of the diverted payments should have been excluded pursuant to their two motions in limine. Both motions asked the court to exclude witnesses and documents not disclosed in discovery, but neither asked specifically to exclude evidence of payments. Given these facts, the trial court did not err by failing to exclude evidence it was not specifically asked to exclude.

Third, even assuming the trial court relied on inadmissible hearsay in ruling on the diverted-payment claim, Appellants fail to show they suffered prejudice sufficient to warrant reversal. (Code Civ. Proc., § 475; *IIG Wireless, Inc. v. Yi* (2018) 22 Cal.App.5th 630, 655.) To meet this "exceedingly high bar" (*IIG Wireless, Inc.*, at p. 655), Appellants had to show "a different result would have been probable" if the inadmissible hearsay evidence had not been admitted. (Code Civ. Proc., § 475.) Unfortunately for Appellants, we cannot determine whether the court would have reached a different result on this issue because we do not have all the evidence presented to it. According to counsel for HK Food in closing argument, Hormachea gave relevant

---

[7] It does not matter that Appellants raised the issue in their motion for new trial. "'"[T]he question of the sufficiency of the complaint to support the findings and judgment in any given case cannot be raised or reviewed upon an appeal from an order denying a motion for a new trial."'" (*Cameron*, *supra*, 82 Cal.App.5th at p. 503.)

11

testimony about the diverted-payment claim.[8]  But missing from the appellate record is Hormachea's first day of testimony.  Also, the court relied on trial exhibit no. 123 to decide the claim, yet none of the trial exhibits were transmitted to us and we could not locate—despite searching the record for— a copy of exhibit no. 123.  Faced with an incomplete record, we must presume the missing evidence supports the trial court's findings.  (*Arceneaux*, *supra*, 51 Cal.3d at p. 1133; *Osgood*, *supra*, 127 Cal.App.4th at p. 435.)

## VI.    *Alter Ego*

Appellants argue the trial court misapplied the alter-ego doctrine by shifting the burden of proof from HK Food to them and the court's alter-ego finding was not supported by substantial evidence.  But the alter-ego claim is just an alternative theory to direct liability.  The trial court found Shaher and Majid directly liable alongside HK Nutrition.  Because we conclude Appellants failed to show on appeal that this finding was error, we need not address their alter-ego argument.

## VII.    *Offset*

Appellants contend the trial court failed to credit them with three items of value HK Food received: (1) about $54,000 of HK Nutrition's accounts receivables; (2) use of HK Nutrition's warehouse equipment and trucks; and (3) about $75,000 of product that was billed to HK Nutrition.  We disagree.

"The party 'seeking an offset against a money judgment has the burden of proving the offset.'"  (*David S. Karton, a Law Corp. v. Musick, Peeler Garrett LLP* (2022) 83 Cal.App.5th 1027, 1040; Evid. Code, § 500.)  We review the denial of offset

---

[8]    In closing, HK Foods' counsel referred to "Ms. Armatella" and "Carolina Armatella."  No witness by the name of Armatella testified, according to the trial minutes and reporter's transcript.  We thus regard these references as being about Carolina Hormachea.

for abuse of discretion.[9]  (*Fassberg Construction Co. v. Housing Authority of City of Los Angeles* (2007) 152 Cal.App.4th 720, 762–763.)

As to the first contention, the trial court expressly found Appellants were not entitled to an offset for the $54,000 in accounts receivables because HK Food had paid about $187,000 of Shaher's accounts payables—which left HK Food paying for more than it received.  According to Appellants, this finding is at odds with the court's ruling that HK Food failed to prove its payables-agreement claim.  Not so.  The payables-agreement claim alleged that HK Food paid about $187,000 of Shaher's accounts payable, which was to be fully repaid from his accounts receivable, and that HK Food recovered only $45,714.65.  The court found HK Food "failed to establish what the terms of that agreement were and how [Shaher] is or was in breach of that agreement."  There is nothing contradictory about these findings.  The court could—and apparently did—find HK Food paid $187,000 for Shaher's debts, recouped only about $45,000, yet failed to show it was owed the balance pursuant to the so-called payables agreement.

Second, although there was evidence HK Nutrition had provided trucks and equipment to HK Food, the court found "no evidence other than Majid Adassi's speculative valuation as to what the value of [the equipment] were."  We find no abuse of discretion in this ruling.

Third, while Majid testified HK Nutrition paid about $75,000 in invoices on behalf of HK Food, "[c]redibility determinations . . . are subject to extremely deferential review" (*Jennifer K. v. Shane K.* (2020) 47 Cal.App.5th 558, 579), and "[a] trier of fact is free to disbelieve a witness . . . if there is any rational ground for doing so" (*In re Jessica C.* (2001) 93 Cal.App.4th 1027, 1043).  Here, the trial court stated it had observed Majid testify, found his "recollection alone, without more, [to be]

---

9        The parties do not identify the standard of review for this claim.

13

unpersuasive," and found he "was not credible and provided convenient and evasive testimony, at times." These are rational grounds for discounting Majid's testimony.

In sum, Appellants have failed to show the trial court erred in its rulings or factual findings.

## DISPOSITION

The judgment is affirmed. Respondents shall recover costs on appeal.


DELANEY, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


SANCHEZ, J.

14