Filed 10/14/22  Johnson v. Johnson CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| JEFFREY F. JOHNSON, | D079048 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 18FL011288C) |
| LISA BRANDOLO JOHNSON, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Jose Castillo, Judge.  Affirmed.

Lisa Brandolo Johnson, in pro. per., for Defendant and Appellant.

Godkin & Brengle, Samuel S. Godkin and Shane C. Brengle for Plaintiff and Respondent.

I.

INTRODUCTION

Lisa Brandolo Johnson appeals from a domestic violence restraining order (DVRO) issued against her under the Domestic Violence Prevention Act

(DVPA) (Fam. Code,[1] § 6200 et seq.) at the request of her ex-husband, Jeffrey Johnson.[2] Jeffrey sought a DVRO after Lisa found out information that he thought he had kept confidential regarding his location while he was on two different trips with his girlfriend and about other airplane tickets that he had purchased. Jeffrey was concerned that Lisa was keeping track of his whereabouts. He was also troubled by the fact that Lisa made telephone calls to the hotel in which he was staying on one of his trips and managed to convince the hotel to connect her to his room, and that she repeatedly questioned his travels and left negative messages for him and their daughter about his trips.

Although Lisa's briefing is not a model of clarity, we discern that she is challenging the sufficiency of the evidence to support the trial court's factual finding that her conduct amounted to abuse under the relevant statutory standards. Lisa also appears to contend that the trial court prevented her from presenting evidence that would have demonstrated that Jeffrey was not being truthful when he claimed that he had not shared his out-of-town locations through a social media application.

The record on appeal is insufficient to permit us to fully review the relevant portions of the record because Lisa failed to include some of the evidence that Jeffrey submitted and on which the trial court relied. However, the portion of the record that Lisa designated on appeal contains substantial evidence to support the trial court's factual findings. In addition, the record does not support Lisa's contention that the trial court prevented her from

---

[1]    Further statutory references are to the Family Code unless otherwise indicated.

[2]    Because the parties share the same last name, we will refer to the parties by their first names for purposes of clarity.

2

offering evidence to support her defense. We therefore affirm the order of the trial court.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Jeffrey filed a request for a DVRO on February 17, 2021. The record supplied by Lisa does not include a full copy of Jeffrey's request for a DVRO, and fails to include both the initial declaration that Jeffrey submitted in support of his request for a DVRO and a supplemental declaration that he submitted in support of his request.[3] Lisa also failed to include any of the exhibits that Jeffrey lodged in support of his request and that the court admitted in evidence.[4]

Although Lisa also failed to include her response to Jeffrey's request for a restraining order, it appears from the trial court documents that Lisa responded to Jeffrey's DVRO request, in part, by requesting that the court issue a DVRO against Jeffrey.

The trial court held a hearing on the parties' cross-requests for a DVRO on March 1, 2021. Both parties testified at the hearing. Jeffrey testified that

---

[3] A copy of the register of actions in the trial court that is included in the clerk's transcript on appeal demonstrates that Jeffrey filed a "supplemental declaration" in support of his request for a DVRO on February 22, 2021. Additionally, the trial court referred to Jeffrey's "declaration" at the hearing on March 1, 2021. We infer from the fact that a "supplemental declaration" is intended to supplement an initial declaration, as well as the fact that the trial court referred to Jeffrey's "declaration" and not to his "supplemental declaration," that Jeffrey filed an initial declaration in support of his request for a DVRO, as well as the supplemental declaration that is included as a separate entry in the register of actions from the trial court.

[4] The transcript indicates that the court admitted certain of Jeffrey's proffered exhibits in evidence at the hearing on the DVRO.

the parties were obligated by a prior court order to communicate solely through the "TalkingParents" application. Jeffrey also noted that two previous restraining orders had been issued protecting him from contact and harassment from Lisa; the first restraining order was granted after an incident during which Lisa threatened her own safety and the second was granted after an incident involving a prior trip that Jeffrey had taken with his girlfriend to San Clemente. Jeffrey testified that even though there was a requirement that the parties communicate only through TalkingParents, Lisa continued to contact him through other means and in a manner that caused him to feel as if she was keeping track of his whereabouts. He also complained about her using TalkingParents to repeatedly contact him and harass him regarding his whereabouts in a manner that felt like it was being done "to threaten and intimidate," and contended that her conduct amounted to a "continu[ing] pattern" that had not stopped, despite the prior orders that were issued in an attempt to bring a halt to similar behavior.

With respect to certain specific incidents that caused Jeffrey to be concerned that Lisa was keeping track of his location, Jeffrey testified about a trip to Arizona that he took with his girlfriend in February 2021. He also brought his children to Arizona on that trip so that the children could see Jeffrey's father and his father's wife. Jeffrey testified that Lisa had agreed to "switch . . . weekend[s]" with him so that the kids could accompany him on the trip to Arizona.[5] According to Jeffrey, even though Lisa had agreed to this change to the parenting schedule, she nevertheless "stalked both

[5]     Comments made at the hearing suggest that Jeffrey submitted an exhibit comprised of copies of TalkingParents correspondence between him and Lisa supporting his contention that Lisa had "agreed to switching the weekend." Again, Lisa failed to include the evidence that the court admitted with respect to this hearing.

4

[Jeffrey] and the kids and their grandparents and called both hotels" while he and the children were in Arizona.[6] Jeffrey said that he had not given Lisa information about where he was staying, yet she "lied to [the] front desk [at his hotel] and then even spoke to [him] on the phone that morning of the 13th of February." She also interrupted a meal that Jeffrey was having with the children, his girlfriend, and his parents.

Jeffrey testified about another incident that occurred between January 1 and January 3, 2021, in which Lisa sent Jeffrey text messages about his location in Mexico, even though he had not shared his location with her.

Lisa did not dispute having made a telephone call to Jeffrey or otherwise attempting to contact him while he was in Arizona; Lisa admitted that she had "simply called [Jeffrey at] the hotel and said 'Please bring my kids back for my Court-ordered visitation.'" At the hearing, Lisa contended that Jeffrey's brother had provided her with information regarding where Jeffrey was staying.

Lisa denied having "track[ed] Mr. Johnson's whereabouts when he went to Mexico." She maintained that she was simply acting as a "concerned mother" who wanted Jeffrey "to take a Covid test because it was stay-at-home orders, and he went to a different country." When directly asked by the court "how [she found] out that he was in Mexico," Lisa stated that his location "pops up on [her] phone." Lisa contended that Jeffrey was "stalking [her] on [her] phone," and that *his* "stalking" *of her* was the reason that information about him "pops up" on her cell phone. Lisa admitted that she had sent Jeffrey a text message about him drinking "wine in Mexico."

---

[6]    Jeffrey indicated that he and his girlfriend were staying at one hotel, while the children and their grandparents were staying at a different hotel.

In response to the court's question concerning how Lisa found out about certain airplane tickets that Jeffrey had purchased, Lisa contended that the parties' "daughter mentioned something to [her] about -- email about plane tickets." However, she then immediately indicated to the court that she "d[id not] know what plane tickets [Jeffrey was] talking about."

The court indicated that it was "primarily" concerned about Lisa's "tracking of [Jeffrey's] location," and asked Lisa whether she had anything else that she wanted the court to consider. Lisa asserted that she was "not tracking his location," that "his brother told [her] where they were," and that she "do[es not] know about the plane tickets." She maintained that their "daughter sent [her] a message about plane tickets." Lisa went on to complain that Jeffrey was "tracking" *her*, and asserted that Jeffrey "controls all of it" and that she "ha[s] no knowledge or ability to track him."

The court provided Jeffrey with an opportunity to respond to Lisa's testimony. Jeffrey testified that the only two people who had knowledge of the name of the hotel at which he was staying in Arizona were himself and his girlfriend. He testified that he had not spoken with his brothers about his trip to Arizona, that he had not informed them of the fact that he was going to be in Arizona, and that he had not provided them with the name of the hotel at which he was planning to stay. Jeffrey also responded to Lisa's statement in her declaration to the effect that Jeffrey's parents had provided her with information about the trip to Arizona. He testified that his mother had no knowledge about the trip until after it took place. Jeffrey further testified that he had spoken with his father and his father's wife about the fact that Lisa had known the hotel at which he and his girlfriend were staying, and they told him that they had not spoken with Lisa about the trip.

6

Jeffrey said that his father told him that Lisa had sent him a "threatening email" before the trip, and that his father, " 'never responded.' "

With respect to the trip to Mexico, Jeffrey stated, "As to Mexico, you see her TalkingParents notes. She knows exactly that I'm drinking wine. She sent it to my daughter. She sent it to me as a threat. She kept threatening me over that weekend, which is basically what she does any time she knows I'm away for a weekend with my girlfriend. And was literally tracking my location the whole time and threatening me and threatening my daughter."[7]

The trial court inquired of Jeffrey as to whether he had "post[ed] any type of photos of [him] drinking wine." Jeffrey denied having done so, and stated, "I use no social media because of Lisa being in my life. I post none of my location stuff. I do not use Facebook." Jeffrey also stated that Lisa "has not been part of our family [Apple] account since when we got the first restraining order in October of 2019." He disputed that he had ever "done anything to her phone or anything along those matters."

The court asked Lisa again how she "kn[e]w that he was drinking wine in Mexico." Her response was, "So on my phone -- I can share it -- I go to my Foursquare app and up comes petitioner." She began to discuss something else and the court directed her to "just answer the question." Lisa then responded, "Petitioner's social media." The court clarified, "So you have

_____

7    Although it is unclear what Lisa said that Jeffrey claimed constituted "threatening" language, at another point during the hearing Jeffrey indicated that Lisa had said to the parties' daughter, " 'Your dad is drinking wine in Mexico. He left you alone. You still want to lie for him?' " It is possible that Jeffrey provided evidence of the statements that Lisa made to him and to their daughter in a declaration he filed in support of his request for a DVRO, but, again, no declarations filed by Jeffrey are included in the record on appeal.

7

access to Mr. Johnson's social media?"  Lisa replied, "I don't know how I have access to it."

Jeffrey then stated, "I don't use social media."  The court asked Lisa whether it was her "representation that you have different plans now," to which Lisa stated, "We're still all on the same account."  Jeffrey disputed this, saying, "We are not on the same account, [Y]our Honor.  I mean, I can clearly show you that.  She got dropped immediately and started complaining about she didn't have access to photos.  This is October of 2019."

The court concluded the hearing by stating, "The Court has significant information to consider [with respect to] Mr. Johnson's request for a restraining order against Ms. Brandolo.[8]  In this case, the Court . . . has considered the totality of the circumstances, including the burden of proof, which is by a preponderance of the evidence.  The Court finds the testimony of Mr. Johnson credible.  The Court finds . . . that he has met his burden by showing by a preponderance of the evidence that Ms. Brandolo caused abuse under Section 6203, as well as 6320.  Specifically, that she has harassed, as well as contacted directly or indirectly by mail or otherwise, as well as that she has disturbed the peace by essentially tracking his whereabouts and contacting him where he has kept his destination private.  The Court, therefore, grants the restraining order."  The court indicated that it would issue the restraining order for a period of three years.

At that point, Lisa continued to attempt to make arguments.  She said, "I don't understand that it's not okay for me to find out where my kids are,

_____

8      At the beginning of the hearing on March 1, Lisa identified herself to the court as "Lisa Brandolo Johnson."  At that point, the trial court asked Lisa whether she preferred to be referred to as Ms. Brandolo or Ms. Brandolo Johnson.  Lisa indicated that "Ms. Brandolo" was "fine," and the court referred to Lisa as "Ms. Brandolo" throughout the DVRO proceedings.

8

when they're supposed to be with me and that petitioner post[s] on social media, which he just said he doesn't have, which is perjury. He does have it." The court explained, "Well, Ms. Brandolo, the Court . . . heard from both sides. And in this case there is a disagreement between the parties. The Court . . . has to resolve those disputes. The Court ruled in favor of Mr. Johnson, and that is the order of this Court." At that point, Lisa said, "What law allows him to take my children and for me not to find out --." The court interrupted her, saying, "Ms. Brandolo, we're not going to engage in this back and forth." The court attempted to ascertain whether Lisa understood that a restraining order was now in place. Lisa continued to make comments such as, "I don't understand how this is compliant with the law."

After granting Jeffrey's request for a DVRO, the court permitted Lisa to speak about her allegations regarding "abuse or any sort of harassment" that caused her to be "in need of a restraining order against [Jeffrey]." Lisa spoke on the record uninterrupted for what amounts to approximately four pages of Reporter's Transcript.[9] Lisa contended that Jeffrey "deprives [her] of basic necessities," and "deprives [her] of seeing [her] children." She asserted that Jeffrey has "a really serious agenda to just erase me from our children's lives." She conceded that "in the beginning . . . [she] was so angry that [she] did not behave well." Lisa also asserted that Jeffrey had "turned

---

[9] Because Lisa does not challenge the trial court's denial of her request for a DVRO, we limit our recitation of the parties' testimony with respect to her request for a DVRO.

[her] utilities off twice." Jeffrey responded to the accusations briefly,[10] and the court permitted Lisa to "have the last word." Lisa again spoke uninterrupted for what amounts to two and a half pages of Reporter's Transcript.

At that point, the trial court issued its oral ruling regarding Lisa's request for a DVRO. The court found that Lisa had not met her burden to demonstrate that Jeffrey had committed "abuse . . . under the law." The court noted that most of the issues that Lisa had raised were "issues that the Court has dealt with in the past regarding payment of bills, as well as visitation." The court specifically found that Jeffrey had not engaged in "any behavior that is prohibited under Family Code Section 6320, at least based on the presentation of the evidence in this case," and denied Lisa's request for a DVRO.

A minute order that the trial court issued after the conclusion of the March 1, 2021 hearing states, in relevant part, with respect to Jeffrey's request for a DVRO: "The court has sufficient evidence for [petitioner's] request against respondent. Court finds [petitioner's] testimony is credible and he has met his burden of proof under a preponderance of evidence and grants a permanent Restraining Order." The DVRO document itself orders Lisa not to, among other things, "[h]arass, . . . stalk, . . . disturb the peace, [or] keep under surveillance," or "[c]ontact" or "[t]ake any action . . . to obtain

---

[10]    Jeffrey discussed with the court evidence that he had submitted in response to an ex parte motion that Lisa had filed regarding certain of her utilities being turned off. Jeffrey stated, "And you've seen in the ex parte that, of course, I gave her notice before I turned off the utilities. I didn't just do it. I sent it to her on TalkingParents and told her when it was going to get turned off both times." The court indicated that the court "remember[ed]" the ex parte matter.

10

the addresses or locations of" Jeffrey. The court issued a separate minute order in which it documented its denial of Lisa's request for a DVRO.

On March 11, 2021, Lisa filed a request for order (RFO) seeking to "change" (capitalization omitted) the DVRO.[11] In the filing, Lisa stated that she was seeking to "change or end the orders because," she asserted, "[t]here was no willful, threatening, or harassing [of] Petitioner to instill fear[,] rather Petitioner used social networking to check into locations and denied it." In her declaration submitted in support of the RFO, Lisa stated that Jeffrey had "used a mutual social networking app, [F]oursquare, to check into his location while he was breaking a court ordered custody agreement . . . ." Lisa also separately filed a document titled "Notice of motion, motion and supporting affidavit for reconsideration of order granting Petitioner's restraining order after hearing." (Some capitalization omitted.) In her motion, Lisa contended that Jeffrey had "lie[d]" during the hearing when he denied having used "Foursquare to check into his locations."

Lisa repeatedly asserted in her paperwork that Jeffrey is "an iPhone app developer with a computer science degree," and further asserted that he is a "hacker and tinkerer" who "handled all the technology stuff during [the parties'] marriage." Lisa contended that, "new and different facts demonstrate that [she] was not 'willfully' or 'maliciously' harassing the Petitioner." She asserted that it was her "misplaced concerns as a mother and abuse survivor that led to the alleged incidents."

Lisa filed a declaration on April 5, 2021, in which she stated that Jeffrey's statement at the hearing that he did not use social media "was perjury." Lisa lodged exhibits that she asserted would demonstrate that she

---

11     Lisa utilized a form request for order, "FL-300," and marked the box next to the word "CHANGE" with respect to her "REQUEST FOR ORDER."

and Jeffrey were "checking into [F]oursquare, a social networking app where you check into your locations." Lisa claimed that she had requested "to show [the court] the evidence on [her] phone," at the hearing on the requests for DVROs, and that the court denied her request.

Lisa apparently filed an appeal from the DVRO, which led the trial court to indicate to Lisa that it did not have jurisdiction to hear Lisa's motion for reconsideration. Although the record is unclear on this point, it appears that Lisa voluntarily dismissed her appeal so that the trial court could hear her motion for reconsideration.

The court held a joint hearing on Lisa's RFO to change the DVRO and her motion for reconsideration of the DVRO on May 13, 2021.

At the hearing, Lisa stated that the reason she "knew where [Jeffrey] was [was] because we had a shared Foursquare app," and there "was no stalking." Lisa repeated that she had valid Covid-related concerns about Jeffrey's travel to Mexico. Lisa asserted that "[t]here was no fear instilled in [Jeffrey]" by her actions. When the trial court indicated that Lisa was straying from the initial question about what her new facts or evidence was, Lisa repeated that the new evidence was "he had online access to my phone, and we had shared apps," and these "apps" were how she knew about Jeffrey's locations regarding his trips to Arizona and Mexico. Lisa asserted that after the conclusion of the March 1 DVRO hearing, she no longer had access to the Foursquare application on her cell phone.

In response, Jeffrey testified that the harassment involved the TalkingParents messages that Lisa had sent, her texts to him, and her calling his hotel in Arizona. He noted that her comments were not Covid-related, and included statements such as, " 'Have fun drinking wine with your girlfriend in Mexico.' "

12

The trial court asked Jeffrey to address Lisa's contention that she and Jeffrey had had shared access to the "Foursquare app" until after the March 1 hearing, when she no longer had access. Jeffrey repeated that he had "never checked in in Mexico" and "never checked in in Arizona," and said that he continued to be unsure as to how, even under Lisa's claim of having mutual access, she would have known of his whereabouts. Jeffrey again stated that he "purposely do[es not] check in when [he's] . . . in these other locations just because it's a point of habit." Jeffrey indicated that "unless it's through some other app that [he's] not aware of tracking his location," he does not "have a Foursquare app on [his] phone, and [he] never [has]."

The trial court reviewed the exhibits that Lisa contended demonstrated that Jeffrey had "checked in" using the Foursquare application. The court asked her at least twice how the exhibits that she had lodged with the court "show . . . that Mr. Johnson checked in," suggesting that the court was not sure that the evidence demonstrated what Lisa believed it did. Lisa specifically identified instances from 2019 and 2020 that she asserted showed that Jeffrey had been at various locations, including a restaurant in La Mesa, the San Clemente Pier, and the Old Globe Theater.

When asked how Lisa had access to "these locations," Jeffrey stated, "She got my password somehow, obviously on her phone, because it's under my account [Jeffrey's e-mail address]." The court indicated that Lisa was asserting that it was a "joint" account, and Jeffrey said that it was not, he had never granted her access to that application, and that he "d[id not] know where this is coming from." Jeffrey repeated that he had never checked in on an application when he was in Mexico or Arizona, and "so [he was] not sure how she tracked [him] there . . . [t]hat's what[ is] confusing to [him]."

13

At the conclusion of the hearing, the trial court stated that it had reviewed Lisa's submissions, as well as the parties' testimony. The court determined that Lisa had not demonstrated that her "request is based upon any new or different facts, circumstances, or law." The court explained to Lisa, "As best as the Court understands your request it is more that you do have a right to find out Mr. Johnson's location when your children are involved. The concern that the Court had in issuing the restraining order is that Mr. Johnson has a right to his privacy as well as to not be harassed or that his peace be disturbed. And the issue regarding you finding out where he was when he wasn't necessarily sharing that information [with] you -- that's what the Court found that was weighty in finding that he had met his burden by a preponderance of the evidence." The court proceeded to deny Lisa's request for reconsideration.

## III.

## DISCUSSION

A.    *Lisa's challenge to the trial court's issuance of the DVRO*

Although Lisa's briefing is confusing and lacks coherent legal arguments, we glean from the briefing that Lisa is challenging the sufficiency of the evidence to support the trial court's issuance of a DVRO against her, and is also contending that the trial court prevented her from presenting evidence of Jeffrey's dishonesty.

1.    *Legal standards*

"Under the DVPA, a court is authorized to issue a protective order ' " 'to restrain any person for the purpose of preventing a recurrence of domestic violence and ensuring a period of separation of the persons involved' upon 'reasonable proof of a past act or acts of abuse.' " ' [Citations.] Abuse includes 'intentionally or recklessly caus[ing] or attempt[ing] to cause bodily

14

injury'; '[s]exual assault'; 'plac[ing] a person in reasonable apprehension of imminent serious bodily injury to that person or to another'; and 'engag[ing] in *any behavior that has been or could be enjoined' under section 6320*. (§ 6203, subd. (a).) Behavior that may be enjoined under section 6320 relevant to this appeal includes 'disturbing the peace of the other party' (§ 6320, subd. (a)), which 'may be properly understood as conduct that destroys [another's] mental or emotional calm.' [Citation.] 'Thus, section 6320 provides that "the requisite abuse need not be actual infliction of physical injury or assault." ' [Citation.]" (*Curcio v. Pels* (2020) 47 Cal.App.5th 1, 11 (*Curcio*), italics added.)

"The DVPA vests the court with discretion to issue a restraining order 'simply on the basis of an affidavit showing past abuse.' [Citation.] The burden of proof is by a preponderance of the evidence. [Citations.] The DVPA 'confer[s] a discretion designed to be exercised liberally, at least more liberally than a trial court's discretion to restrain civil harassment generally.' [Citation.]" (*Curcio, supra*, 47 Cal.App.5th at p. 11.) We therefore "review the grant of a DVPA restraining order for abuse of discretion, and, to the extent we are called upon to review the court's factual findings, we apply the substantial evidence standard of review." (*Id*. at p. 12.) "In reviewing the evidence, we examine the entire record to determine whether there is any substantial evidence—contradicted or uncontradicted—to support the trial court's findings," and "[w]e must accept as true all evidence supporting the trial court's findings, resolving every conflict in favor of the judgment." (*Ibid*.) A basic tenet of appellate review is that an appellate court does not make credibility determinations or reweigh the evidence; if substantial evidence supports the judgment, reversal is not warranted even if facts exist that would support a contrary finding. (*Ibid*.)

2.    *Analysis*

Although Lisa's briefing on appeal lacks clarity, it is clear that she is challenging the trial court's finding that her conduct rose to the level of "stalking or harassing" Jeffrey.  She asserts that that "there is no substantial evidence to support [the court's] finding" in this regard.

We conclude that Lisa cannot demonstrate that there is insufficient evidence to support the trial court's findings.  First, Lisa has not included in the record on appeal all of the evidence that the trial court admitted and considered with respect to Jeffrey's request for a DVRO.  In particular, as noted, the record does not include the declarations that Jeffrey submitted to the court in support of his request.  " 'A judgment or order of the lower court is *presumed correct*.  All intendments and presumptions are indulged to support it on matters as to which the record is silent' " (*Rossiter v. Benoit* (1979) 88 Cal.App.3d 706, 712.)  "It is the appellant's affirmative duty to show error by an adequate record."  (*Osgood v. Landon* (2005) 127 Cal.App.4th 425, 435.)  "A necessary corollary to this rule [is] that a record is inadequate, and appellant defaults, if the appellant predicates error only on the part of the record he provides [in] the trial court, but ignores or does not present to the appellate court portions of the proceedings below which may provide grounds upon which the decision of the trial court could be affirmed."  (*Uniroyal Chemical Co. v. American Vanguard Corp.* (1988) 203 Cal.App.3d 285, 302.)  Lisa's failure to provide this court with all relevant evidence that the trial court considered requires that we presume that those portions that Lisa failed to include on appeal would support the trial court's findings.

Despite Lisa's failure to provide all of the evidence on which the trial court relied in ruling on Jeffrey's request for a DVRO, the record that Lisa

16

*has* provided on appeal contains substantial evidence to support the trial court's findings.

Although Lisa focuses on challenging whether her conduct in fact amounted to "stalking" or "harassment," it is clear that the trial court concluded not only that Lisa had engaged in harassment, but also that she had disturbed Jeffrey's peace, which itself constitutes "abuse" under the DVPA scheme. (See *In re Marriage of Nadkarni* (2009) 173 Cal.App.4th 1483, 1497.) " '[D]isturbing the peace of the other party' refers to conduct that, based on the totality of the circumstances, destroys the mental or emotional calm of the other party. This conduct may be committed directly or indirectly, . . . and by any method or through any means including, but not limited to, telephone, online accounts, text messages, internet-connected devices, or other electronic technologies." (§ 6320, subd. (c).) Lisa has not addressed the court's finding that she "destroy[ed] the mental or emotional calm" of Jeffrey; a review of the testimony given at the hearing demonstrates that the court relied on sufficient evidence in making its determination on this point. The trial court clearly credited Jeffrey's testimony with respect to the issues about which he testified, and believed Jeffrey's assertions that he had not shared his locations through social media and that he had not shared information with the parties' daughter about purchasing certain plane tickets. "[T]rial courts are in the best position to assess witness credibility" and for this reason we must defer to a trial court's credibility determinations. (*Doe v. Lee* (2022) 79 Cal.App.5th 612, 621.) In particular, the trial court relied on Jeffrey's testimony that he had specifically tried to avoid sharing his location with anyone, and, specifically, with Lisa. The testimony of a single witness, if believed by the factfinder, constitutes substantial evidence to support a finding. (*In re Marriage of F.M. & M.M.* (2021) 65 Cal.App.5th 106,

17

119 [" 'The testimony of one witness, even that of a party, may constitute substantial evidence' "].)

In addition, Jeffrey's testimony reasonably supports the conclusion that Lisa's actions had the effect of destroying his mental and emotional calm. He testified that he had experienced "trauma" from Lisa's repeated actions. His testimony clearly indicated that he was unnerved by the fact that Lisa was able to locate him when he thought that he had kept his whereabouts confidential, and also by the fact that Lisa was repeatedly making hostile comments to him about his travels. Further, although the trial court focused much of its questioning on whether and to what extent Lisa had improperly tracked Jeffrey, her *repeated conduct in messaging, calling, and texting Jeffrey* with hostile commentary about his travels, as well as her accusations that he was violating the custody order despite the fact that Lisa had agreed to the schedule changes, provided additional grounds for the court's issuance of a DVRO. The court determined that Lisa's conduct, in discovering Jeffrey's location and ensuring that *she made him aware of the fact that she knew his location*, was having the effect of disturbing Jeffrey's peace to such a degree that the issuance of a DVRO was warranted. Jeffrey's testimony at the hearing provides sufficient evidence to support the trial court's finding that Lisa's conduct, on the whole, destroyed Jeffrey's sense of mental and emotional calm.

Lisa also contends that the trial court "did not allow [her] to show evidence of Jeffrey's social media account," and claims that if the court would have permitted her "to present evidence of [Jeffrey's] social media account checking in to locations," this "evidence would have caught Jeffrey in a lie." However, Lisa does not cite to the record to support her assertion that the court precluded her from presenting any evidence. This court has

18

independently reviewed the transcripts of the proceedings included in this record and has found nothing that would support Lisa's contention that the trial court prevented her from presenting evidence. In fact, during the hearing on Lisa's motion for reconsideration, she presented documents that she contended would demonstrate that Jeffrey in fact had the "social media account" in question and that he had therefore lied to the court at the prior hearing. The trial court not only considered those documents, but it engaged with both Lisa and Jeffrey regarding those documents and the conclusions that could be drawn from them. The court ultimately concluded that the evidence that Lisa presented was insufficient to cause the court to change its determination with respect to the DVRO. There is nothing in the record that indicates that the court prevented Lisa from "show[ing]" her evidence or attempting to demonstrate that Jeffrey had been dishonest at the prior hearing. We therefore reject Lisa's assertion that the trial court prevented her from fully presenting the evidence in her possession that was relevant to Jeffrey's credibility or to the issues addressed in the DVRO matter.

In sum, Lisa has failed to demonstrate that the court erred in issuing a DVRO protecting Jeffrey, either by making findings unsupported by substantial evidence, or by unfairly limiting the evidence that Lisa was permitted to submit.

B.    *Lisa's request for judicial notice and lodgment of evidence in this court*

On May 27, 2022, the same date on which Lisa filed her reply brief, she submitted two sets of documents in this court. The first is a request for judicial notice, pursuant to which Lisa seeks to have this court take judicial notice of an order filed by a judge of the San Diego County Superior Court in

Lisa and Jeffrey's martial dissolution action.[12]  The order was entered and filed by the trial court on March 11, 2022—i.e., almost a year after the trial court held the hearing on Jeffrey's request for a DVRO and issued the ruling at issue in this appeal.  " 'Reviewing courts generally do not take judicial notice of evidence not presented to the trial court' absent exceptional circumstances."  (*Haworth v. Superior Court* (2010) 50 Cal.4th 372, 379, fn. 2.)[13]  Lisa has offered no exceptional circumstances that would warrant our consideration of this document, and we find none.

In any event, the court order is not relevant to our resolution of this appeal.  (See *Save Lafayette Trees v. East Bay Regional Park Dist.* (2021) 66 Cal.App.5th 21, 29, fn. 2 [denying judicial notice of documents that "are not necessary to resolve th[e] appeal"].)  Lisa offers the document in an attempt to call into question Jeffrey's credibility as to his testimony regarding the need for the DVRO; in other words, Lisa believes that the order provides evidence of Jeffrey's dishonesty.  However, on appeal, we do not make independent assessments of credibility or weigh evidence (See, e.g., *In re Caden C.* (2021) 11 Cal.5th 614, 640 [a reviewing court does not reweigh

---

[12]    The proceeding resulting in the order for which Lisa seeks judicial notice by this court was presided over by a judge other than the judge who presided over the DVRO proceeding at issue in this appeal.

[13]    "It has long been the general rule and understanding that 'an appeal reviews the correctness of a judgment as of the time of its rendition, upon a record of matters which were before the trial court for its consideration.' [Citation.]  This rule reflects an 'essential distinction between the trial and the appellate court . . . that it is the province of the trial court to decide questions of fact and of the appellate court to decide questions of law . . . .' [Citation.]  The rule promotes the orderly settling of factual questions and disputes in the trial court, provides a meaningful record for review, and serves to avoid prolonged delays on appeal."  (*In re Zeth S.* (2003) 31 Cal.4th 396, 405 (*Zeth S.*).)

evidence, evaluate the credibility of witnesses, or resolve conflicts in the evidence]); rather, our role is to determine whether there is substantial evidence *in the record before the trial court* to support the trial court's findings. This court therefore has no occasion to consider and/or weigh the findings made by a different judge in a separate, subsequent proceeding in this matter. Because the order of which Lisa seeks judicial notice is not relevant to our review of the trial court's DVRO ruling, we decline to take judicial notice of it.

The second set of documents that Lisa submitted on May 27, 2022 is a lodgment of exhibits. This court is unable to ascertain definitively from the appellate record whether any or all of these documents were lodged in the trial court; the mere lodging of evidentiary exhibits directly in this court does not render those documents (a) part of the record in this court or (b) appropriate for consideration by this court.[14]

"As a general rule, documents not before the trial court cannot be included as a part of the record on appeal." (*Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184.) However, in rare circumstances, a reviewing court may take new evidence on appeal: " 'Although appellate courts are authorized to make findings of fact on appeal by Code of Civil Procedure section 909 and rule [8.252(b)] of the California Rules of Court, the authority should be exercised sparingly. [Citation.] *Absent exceptional circumstances,*

---

[14] Some of the documents appear to be similar to exhibits mentioned in the reporter's transcript from the hearing on Lisa's motion for reconsideration and the RFO modifying the DVRO held on May 13, 2021. Others do not appear to be mentioned in the transcript. With respect the documents that seem to resemble documents mentioned by the court or parties in the reporter's transcript, this court has not been presented with sufficient information to ascertain whether these documents are, in fact, the same documents that Lisa lodged as exhibits in the trial court.

*no such findings should be made.'"* (*Zeth S., supra,* 31 Cal.4th at p. 405.) "The power [of an appellate court to make findings of fact] created by the statute is discretionary and should be invoked sparingly, and only to affirm the case." (*Golden West Baseball Co. v. City of Anaheim* (1994) 25 Cal.App.4th 11, 42.)

To the extent that Lisa is requesting that this court take new evidence that is not in the record on appeal, California Rules of Court, rule 8.252 requires that a party "*move* that the reviewing court take [new] evidence" (italics added). In other words, a party to an appeal must file a motion that complies with the general rules for motions made on appeal (see Cal. Rules of Court, rule 8.54 [setting out rules for motions made on appeal]) in order to request that a reviewing court take new evidence. Lisa has not filed a motion requesting that this court take and admit new evidence, nor has she complied in substance with the requirements associated with the making of a motion on appeal (see rules 8.54(a)(1) [party "must serve and file a written motion stating the grounds and the relief requested and identifying any documents on which the motion is based"] and 8.54(a)(2) ["motion must be accompanied by a memorandum and, if it is based on matters outside the record, by declarations or other supporting evidence"]). Given the lack of compliance with these important procedural requirements, we decline to accept or consider the documents that Lisa has lodged as exhibits in this court.

Moreover, even if Lisa had followed the procedural rules for requesting that this court take new evidence, there is no indication in the record that the taking of such evidence would be proper under the circumstances presented. "The power to take evidence in the Court of Appeal is never used where there is conflicting evidence in the record and substantial evidence supports the trial court's findings." (*Philippine Export & Foreign Loan Guarantee Corp. v.*

*Chuidian* (1990) 218 Cal.App.3d 1058, 1090.) This is because such "[new] evidence normally must enable the Court of Appeal to affirm the judgment, not lead to a reversal." (*Ibid.*) In this case, the parties presented conflicting evidence in the trial court, and as we have explained, there is substantial evidence in the record to support the trial court's factual findings. In such circumstances, it is not proper for this court to take and consider new evidence proffered on appeal.[15]

IV.

DISPOSITION

The order of the trial court is affirmed.

AARON, J.

WE CONCUR:

McCONNELL, P. J.

DATO, J.

---

[15] To the extent that Lisa believes that trial court order that is the subject of her request for judicial notice in this court or the documents that she has lodged in this court constitute new evidence that would warrant the termination of the DVRO, she may file a motion in the trial court to terminate the DVRO and submit the evidence to the trial court in support of that motion. (See § 6345, subd. (a) [a DVRO is "subject to termination or modification by further order of the court either on written stipulation filed with the court or *on the motion of a party*" (italics added)].) However, to the extent that any of the lodged documents are the same documents that were previously presented to the trial court but have not been identified as such and properly included in the record on appeal, the documents clearly would not support the termination of the DVRO, given that such evidence would have been considered and weighed by the trial court in the proceedings that form the basis of this appeal.