Filed 6/13/24 Alers v. Kossuth CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| HAZEL ALERS, Individually and as Successor in Interest, etc. et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> SARA R. KOSSUTH et al., <br><br> Defendants and Respondents. | B322634 <br><br> (Los Angeles County Super. Ct. No. 20STCV36943) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Gary Y. Tanaka, Judge. Affirmed.

Hazel Alers and Alejandro Alers, Jr., in pro. per., for Plaintiffs and Appellants.

Schmid & Voiles, Denise H. Greer, Patrick W. Mayer and David J. Masutani for Defendant and Respondent Sara R. Kossuth, D.O.

Kelly, Trotter & Franzen, Brenda Ligorsky, Kristina A. Hoban and David P. Pruett for Defendants and Respondents HealthCare Partners Affiliates Medical Group, Mary Jean

Lockard, N.P., N. Isabel Kiefer, M.D., Hogop Sarkissian, M.D. and Kelly Winer, S.W.

Beach Law Group, Paul D. Singer and Darryl C. Hottinger for Defendant and Respondent Windsor Terrace HealthCare.

———————————————

Following the death of the 98-year-old Alejandro Alers, Sr. (decedent), his wife, Hazel Alers, and son, Alejandro Alers, Jr., brought suit against a number of individuals and entities involved in his care. The defendants all prevailed in pretrial motions and judgment was entered in their favor. Plaintiffs appealed. Previously, we granted multiple defendants' motion to dismiss the appeal as against them, on procedural grounds. In addition, while this action was pending, another defendant Windsor Terrace Healthcare Center filed a petition for bankruptcy, and the appeal is stayed as to that party. We now address plaintiffs' appeal as to the remaining defendants. Plaintiffs, who are proceeding in propria persona, have submitted briefs and an appellate record that are largely inadequate to enable review. To the limited extent their arguments are cognizable, they are meritless. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

### 1. Underlying Facts

We set forth the facts as alleged in the operative, second amended, complaint. We limit our factual discussion to a brief overview, with detailed attention paid to the allegations against

the one defendant doctor who successfully demurred on the basis of failure to state a claim.

## A. Treatment at the Hospital and Allegations Against Dr. Sara Kossuth

On March 23, 2019, decedent, then 97, was found by wife to be slumped over in a chair and non-responsive. Wife called 911 and decedent was rushed to Olympia Medical Center (Hospital), where he was diagnosed as suffering from a heart attack and pneumonia. He was admitted to Hospital.

Plaintiffs allege decedent suffered malpractice at the Hospital, which ultimately led to his death. However, plaintiffs' appeal has been dismissed as to all Hospital-related defendants but one, Dr. Kossuth, whose involvement in his treatment was minimal.

During his hospitalization, nurses – on the orders of a different doctor – attempted to insert a urinary catheter in decedent. After several painful attempts, the catheter was inserted, only for decedent to rip it out. Nurses reinserted the catheter and the decedent remained in pain. He continued to pull at the catheter tube. Dr. Kossuth ordered that decedent be placed in hand restraints to prevent him from pulling at the tube.

Dr. Kossuth also called a urologist to consult. That urologist concluded the catheter had been inserted incorrectly. He removed it, and ultimately successfully placed a different type of catheter. Following this process, Dr. Kossuth made a comment which, according to plaintiffs, implied that all of decedent's pain was attributable to his act of pulling out the catheter – intentionally concealing that the catheter had, in fact, been incorrectly placed by the nurses.

3

Plaintiffs' allegations against Dr. Kossuth in the operative complaint are limited to her ordering hand restraints and her comment allegedly placing blame on decedent for his catheter-related pain.

**B.    Treatment at the Skilled Nursing Facility and Allegations Against HealthCare Partners**

Decedent's health problems were in no way limited to urinary ones, although plaintiffs allege the improper catheter placement was causal.  Decedent had stopped eating and drinking; wife and son requested placement of a gastrostomy tube, which was successfully performed.  After decedent's condition had stabilized, he was transferred to Windsor Terrace Healthcare Center (Skilled Nursing Facility), which is a contracted facility of HealthCare Partners Affiliated Medical Group.  Skilled Nursing Facility is presently in bankruptcy; we have stayed the appeal against it.  (11 U.S.C. § 362.)  Plaintiffs' appeal is still pending against HealthCare Partners and a number of individuals associated with HealthCare Partners – Dr. N. Isabel Kiefer, Dr. Hagop Sarkissian, nurse practitioner Mary Jean Lockard, and social worker Kelly Winer.  As these five defendants and respondents presented a unified defense at trial and on appeal, we use "HealthCare Partners" to refer to them collectively.

The specific factual allegations against HealthCare Partners are unnecessary to the resolution of this appeal.  Broadly speaking, plaintiffs allege that HealthCare Partners forced them to agree to transfer decedent to Skilled Nursing Facility; and then, once he was there, promised to transfer him home with 24-hour nursing care and all necessary rehabilitation

4

resources, when instead they dumped him into home hospice care with palliative treatment only.

### C.      Home Hospice Care and Death

When decedent was discharged from Skilled Nursing Facility, his care was transferred to Seasons Hospice & Palliative Care of California (Hospice).  Plaintiffs' appeal of the judgment in favor of Hospice and individuals associated with it has been dismissed; decedent's treatment by Hospice is therefore not at issue in this appeal.  In sum, plaintiffs alleged that, despite what they had been promised, Hospice provided only routine palliative care, and decedent died within a week.  Decedent died on April 30, 2019.

## 2.      *Commencement of the Action*

On September 28, 2020, plaintiffs, representing themselves, filed their complaint, alleging some 23 causes of action against myriad defendants.  There were three purported plaintiffs:  wife, son, and decedent's estate.  This would ultimately give rise to the legal issue of whether the estate could proceed in propria persona.

On January 19, 2021, plaintiffs filed their first amended complaint, which was brought by the same three plaintiffs, including the estate, and now alleged 24 causes of action. Plaintiffs' first amended complaint was accompanied by a declaration of son "in support of admission into evidence of the plaintiffs' exhibits," and a stack of exhibits (which mostly, but not exclusively, consisted of decedent's medical records).[1]

---

[1]      The record is not clear as to the official status of these exhibits.  Although they were submitted along with the first amended complaint, they were not technically exhibits to it; it therefore does not appear that they were impacted when the first

5

### 3.    *Dismissal of the Estate's Action*

On February 11, 2021, HealthCare Partners demurred to the first amended complaint on the basis that all causes of action alleged against it were alleged by decedent's estate, which could not proceed against it in propria persona.[2]  Plaintiffs opposed the demurrer, and subsequently filed a supplemental opposition.

On November 5, 2021, the trial court sustained the demurrer with leave to amend, concluding that the estate could not, in fact, proceed in propria persona.[3]  The court set the matter for an order to show cause regarding the status of representation of the estate.

On November 23, 2021, plaintiffs filed their operative, second amended complaint.  Nominally, plaintiffs had removed the estate as a plaintiff.  Factually, however, they had not.  Instead of purporting to allege causes of action on behalf of the estate, wife simply alleged those same causes of action "as

---

amended complaint was later superseded by the second amended complaint.  But taken as an independent filing, the exhibits were not submitted in connection with any hearing; son provided a declaration in support of admitting them into evidence, but there was no trial where evidence was taken, and there is no indication that the court ever ruled on their admissibility.  Under the circumstances, we think it best to treat the exhibits as simply lodged with the trial court.

[2]    Plaintiffs have not chosen to include the points and authorities in support of the demurrer in their record on appeal.

[3]    The record on appeal contains the trial court's tentative ruling, not the court's final ruling.  However, it is clear from later events that the court adopted its tentative.

6

surviving spouse" of decedent, under statutes providing for survival of a cause of action.  (E.g., Code Civ. Proc., § 377.30.)

On December 9, 2021, the court held a hearing on the order to show cause regarding representation of the estate.  By this time, there was still no attorney representing the estate, and the court ordered the estate dismissed without prejudice.  On December 9, 2021, the court signed a form order of dismissal without prejudice of the estate's complaint.  The next day, the court signed a counsel-prepared order, specifically dismissing (by number), each cause of action in the second amended complaint brought by the estate – or, more accurately, each cause of action brought by wife as decedent's surviving spouse.  HealthCare Partners served notice of entry of the order of dismissal on December 16, 2021.

While this order disposed of all of the causes of action alleged by the estate, it did not resolve the entirety of the action against HealthCare Partners.  The second amended complaint had added a cause of action for wrongful death, pursued by wife on her own behalf.

Following the filing of the second amended complaint and the dismissal of the estate, both Dr. Kossuth and HealthCare Partners ultimately obtained judgment.  Although the relevant proceedings overlapped chronologically, we discuss the defendants separately.

4.     *Dr. Kossuth Ultimately Prevails on Demurrer*

Dr. Kossuth had not been successfully served with plaintiffs' first amended complaint.  She was not served until February 4, 2022, after the second amended complaint had been filed.

Dr. Kossuth was named in three causes of action in the second amended complaint: two causes of action brought by wife as surviving spouse (intentional misrepresentation and concealment) and wrongful death brought by wife herself.

On March 24, 2022, Dr. Kossuth demurred to the complaint on the basis that it failed to state facts sufficient to state a cause of action against her. As to the causes of action brought by wife as surviving spouse, Dr. Kossuth argued that they had already been dismissed. As to the wrongful death cause of action, Dr. Kossuth argued that the allegations of the complaint did not actually allege any tortious act or omission on the part of Dr. Kossuth that caused decedent's death.[4]

The court found the demurrer was moot as to the two survival causes of action, as they had already been dismissed. As to the wrongful death cause of action, the court sustained the demurrer with 20 days leave to amend.[5] Plaintiffs did not amend

---

[4]  Factually, this was correct. The wrongful death cause of action alleged decedent's death was caused by another doctor's order for catheter placement and the nurses' improperly insertion of it. Even considering previous allegations incorporated by references, plaintiffs allege only that Dr. Kossuth ordered hand restraints; they do not allege that the hand restraints caused death.

[5]  The court ruled on Dr. Kossuth's demurrer at the same time as demurrers brought by Hospital and Hospice. At least one of those defendants successfully relied on the statute of limitations as a defense. Although Dr. Kossuth had not raised the statute of limitations in her demurrer, the court offered it as an additional basis for sustaining her demurrer to the wrongful death cause of action. In her respondent's brief on appeal, Dr.

8

during that time and, on Dr. Kossuth's ex parte motion, the court dismissed the action against her. Judgment was entered in Dr. Kossuth's favor on July 11, 2022. Plaintiffs filed their notice of appeal on August 5, 2022.

## 5. *HealthCare Partners Ultimately Prevails on Summary Judgment*

### A. Deemed Admitted Order

HealthCare Partners had submitted requests for admission to wife. Wife did not answer those requests for admission. HealthCare Partners moved to deem the matters admitted.[6] Wife's response to this critical motion consisted of a single page of argument plus another page of conclusion. She argued that: (1) the "definitions" section of the requests for admission referred to legal theories, but failed to define them in layperson's terms; (2) the requests for admission were "not related to any facts as alleged" in the operative complaint; and (3) the requests for admission improperly sought admissions related to legal theories, not facts.[7]

---

Kossuth does not rely on the statute of limitations, and we therefore do not address it.

[6] Although plaintiffs have included in the record on appeal some discovery-related documents, most of those documents do not relate to HealthCare Partners' motion to deem admitted their unanswered requests for admission to wife. Plaintiffs have included in the appellate record wife's opposition to that motion; but not the motion, the discovery request itself, or, in fact, the court's ruling on the motion.

[7] Here, wife quoted a single request for admission: "Admit that these requesting Defendants did not commit PHYSICAL ABUSE on decedent." She argued that physical abuse is a legal

9

In December 2021, the trial court ordered the matters deemed admitted, on the basis that wife had failed to serve timely responses to the requests.[8]

### B. Summary Judgment

The deemed-admitted order was devastating to wife's remaining wrongful death cause of action against HealthCare Partners. HealthCare Partners obtained summary judgment on the basis that, as part of that order, wife was deemed to have admitted that the care and treatment HealthCare Partners rendered was at all times appropriate and that no act or omission on their part had caused decedent's death.[9]

Summary judgment was granted in favor of HealthCare Partners on April 1, 2022. Wife immediately moved for reconsideration, on the basis that her answers to HealthCare Partners' *interrogatories* raised a triable issue of fact.[10] The court

theory, not a fact. As the requests for admission are not part of the record on appeal, we do not know how the capitalized phrase "PHYSICAL ABUSE" was defined by HealthCare Partners for the purpose of the requests for admission.

[8] We know this ruling from the court's tentative, which wife subsequently attached as an exhibit to a later motion, as well as other filings referring to it.

[9] The appellate record provided by plaintiffs contains neither the motion for summary judgment nor any of the briefing on it. Plaintiffs limit their record to the trial court's tentative order granting the motion. (Although the respondents' appendix submitted by HealthCare Partners contains, as an exhibit to another document, the motion for summary judgment itself, it does not include the supporting documents or points and authorities.)

10

entered judgment for HealthCare Partners on May 31, 2022. On July 27, 2022, the court denied reconsideration on the basis that it lacked jurisdiction, but indicated that the reconsideration motion would not have changed the result. As noted above, plaintiffs filed their notice of appeal on August 5, 2022.

## 6. *Briefing on Appeal*

As we have discussed, Hospital and Hospice have been dismissed from the appeal (and the appeal has been stayed as to Skilled Nursing Facility). However, the dismissals and stay did not occur until after plaintiffs, still proceeding without counsel, had filed their opening brief.[11] That brief does not separate out arguments by defendant, and instead takes a holistic approach to showing error, mainly arguing that (1) the allegations of the complaint and lodged exhibits support claims for relief; and (2) the trial court exhibited bias and unfairness against them.

[10] Wife's answers to the interrogatories were quite superficial, and simply referred to the allegations of the complaint and the exhibits lodged by son.

[11] At no point before the trial court or on appeal did son argue that he was proceeding as anything but a propria persona litigant. However, the proofs of service plaintiffs submitted with their appellate briefs indicate service was made by son, with the state bar No. 240532, of the "Law Office of Alex Alers." We take judicial notice of the information on the California State Bar's website pertaining that bar number. Those records indicate that son was, at one time, licensed to practice law. He was ordered inactive prior to the filing of the complaint in this matter, and was disbarred shortly thereafter, on October 31, 2020. <https://apps.calbar.ca.gov/attorney/Licensee/Detail/240532> [as of June 11, 2024] archived at <https://perma.cc/YBU9-SYQK>. We caution son against further representations that he is licensed to practice, whether intentional or inadvertent.

Only in the course of these arguments and in their conclusion do they argue the court erred in the key rulings at issue in the appeal: (3) the demurrer ruling barring the estate from litigating in propria persona; (4) the dismissal in favor of Dr. Kossuth; (5) the order deeming admitted HealthCare Partners' requests for admission against wife (erroneously described as the court "order[ing] judicial notice" of the requests); and (6) the grant of HealthCare Partners' motion for summary judgment.

After Dr. Kossuth and HealthCare Partners filed their respective respondent's briefs focusing on the dispositive rulings, plaintiffs filed a reply. The reply brief, however, does not address the merits. Instead, plaintiffs have used their reply brief to: (7) seek reconsideration of our order dismissing their appeal as to Hospital and Hospice; (8) contend that no timely respondent's briefs were actually filed; and (9) argue that Skilled Nursing Facility's bankruptcy filing constituted an admission of the merits of this action which should result in an immediate judgment against Skilled Nursing Facility (and, through conspiracy allegations, also be binding against Health Care Partners). This final argument prompted Skilled Nursing Facility to file a motion to strike the reply brief and request for sanctions, for violating the automatic bankruptcy stay. We decline to impose sanctions but disregard this improper argument.

### DISCUSSION

1. *Plaintiffs' Argument as to the Merits of their Complaint Is Irrelevant*

The majority of plaintiffs' opening brief is devoted to a rehash of the allegations of their complaint and an argument

that, factually, they have made sufficient allegations to support each cause of action alleged.

But, with the exception of the order sustaining Dr. Kossuth's demurrer to wife's wrongful death cause of action, which we discuss below, none of the rulings at issue on this appeal implicate the sufficiency of plaintiffs' allegations. This argument is therefore irrelevant.

## 2. *Plaintiffs' Argument as to Judicial Bias Is Unsupported by the Record*

" '[I]t is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on the appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment. [Citations.]' [Citation.] 'This means that an appellant must do more than assert error and leave it to the appellate court to search the record and the law books to test his claim. The appellant must present an adequate argument including citations to supporting authorities and to relevant portions of the record.' " (*L.O. v. Kilrain* (2023) 96 Cal.App.5th 616, 619-620.) If a party fails to support an argument with necessary citations to the record, the argument is deemed to have been waived. (*Id.* at p. 620.) This rule applies equally to parties represented by counsel and self-represented parties. (*Ibid.*)

In plaintiffs' brief, they argue that the trial court was biased against them, based on any number of statements the trial court allegedly made.[12] There is no citation to the record for any

_____

[12] For example, plaintiffs represent that the trial judge "stated at the multiple discovery hearings that he had over 700 cases before his Court. He did not have the time to read nor

13

of these statements and our review of the record reveals no evidence of them.  With no evidence to support this argument, it is considered waived.

### 3.    *The Estate Could Not Proceed In Propria Persona*

The vast bulk of the causes of action in plaintiffs' first amended complaint were not brought directly by wife and/or son, but were pursued on behalf of the estate.  When the trial court concluded that plaintiffs could not litigate in propria persona on behalf of the estate, plaintiffs amended their complaint to reassert the same causes of action, but replace the estate plaintiff with wife as decedent's "surviving spouse."  The trial court concluded this recharacterization made no difference, and dismissed those causes of action pursuant to its prior order.

The court's initial ruling, that plaintiffs could not represent the estate in propria persona, was correct.  "[A] conservator, executor, or personal representative of a decedent's estate who is unlicensed to practice law cannot appear in propria persona on behalf of the estate in matters outside the probate proceedings." (*Hansen v. Hansen* (2003) 114 Cal.App.4th 618, 619.)  While unlicensed individuals can represent their own interests in legal proceedings, they cannot represent the interests of others.  (*Id.* at p. 621.)

---

consider the Plaintiffs' opposition papers.  He was going to make his decision regarding the Discovery issues based sole[l]y upon the arguments of the Defendants.  If the Defendants' arguments made logical sense, he planned to rule in the Defendant's favor and levy sanctions against the Plaintiffs for failure to answer the Defendant's interrogatories, also including but not limited to, the Court's finding of judicial notice of admissions of facts against the Plaintiffs."

14

The question next raised is whether wife could avoid this prohibition by recasting the claims by the estate as claims brought by "herself as the surviving spouse of the [e]state" and by invoking the statutes governing survival of causes of action. She cannot. Preliminarily, she has not alleged a sufficient basis to pursue the causes of action under the survival statute. Code of Civil Procedure section 377.30 provides, "A cause of action that survives the death of the person entitled to commence an action or proceeding passes to the decedent's successor in interest [subject to identified sections of the Probate Code] and an action may be commenced by the decedent's personal representative or, if none, by the decedent's successor in interest."[13] A "surviving spouse" is not necessarily a successor in interest nor a personal representative of the estate – she may be either, both, or neither. Moreover, the survival doctrine alone cannot solve plaintiffs' representation problem. If wife is purporting to pursue these causes of action as the personal representative of the estate, rather than for herself as a sole successor in interest, she would still be representing others' interests, and be barred from proceeding in propria persona.

In short, plaintiffs' amendment of their pleading did not resolve the issue that they could not pursue causes of action on behalf of the estate in propria persona, and the court did not err in dismissing those claims.

---

[13]    Code of Civil Procedure section 377.32 requires that a person who seeks to pursue a survival action under these provisions, "shall execute and file an affidavit or a declaration under penalty of perjury" setting forth the factual basis for their right to pursue the action. There is no evidence in the record that wife complied with this provision.

15

**4.** ***Wife Has Not Established Error in the Dismissal of Dr. Kossuth***

The discussion portion of plaintiffs' brief does not contain any express arguments against the dismissal in favor of Dr. Kossuth; instead, those arguments are briefly made in the conclusion section of their brief.[14]  These arguments violate the Rules of Court, which require briefs to state each point under a separate hearing and support it by argument and, if possible, citation to authority.  (Cal. Rules of Court, rule 8.204(a)(1)(B).)  We consider these arguments as forfeited and decline to consider them.  (*People v. Lombardo* (2020) 54 Cal.App.5th 553, 565, fn. 6.)

**5.** ***Wife Has Not Established Error in the Order Deeming Matters Admitted***

Wife suggests the trial court erred in granting HealthCare Partners' motion to deem admitted its requests for admission.  The record wife submitted on appeal does not contain the requests for admission themselves or HealthCare Partners' motion to deem them admitted; wife's record on this issue consists only of her opposition to the motion.

---

[14]  Specifically, plaintiffs raise a new issue, suggesting – contrary to their representation in the case management statement – that Dr. Kossuth was properly served with the first amended complaint and plaintiffs were therefore entitled to default judgment against her.  Following that argument, plaintiffs' reply brief simply states, with no argument or citation to authority, "Plaintiffs have stated sufficient facts in the [second amended complaint] to constitute a valid cause of action, or in the alternative, the Plaintiffs should be permitted to amend the [second amended complaint]."  But plaintiffs were, in fact, granted leave to amend as to Dr. Kossuth, but failed to do so.

16

"It is the appellant's affirmative duty to show error by an adequate record.  [Citation.]  'A necessary corollary to this rule [is] that a record is inadequate, and appellant defaults, if the appellant predicates error only on the part of the record he provides the trial court, but ignores or does not present to the appellate court portions of the proceedings below which may provide grounds upon which the decision of the trial court could be affirmed.' " (*Osgood v. Landon* (2005) 127 Cal.App.4th 425, 435.)  Wife has failed in her duty to provide an adequate record, and has defaulted in her burden to establish error.

In any event, Code of Civil Procedure section 2033.280 provides that if a party fails to timely respond to requests for admission, the requesting party may move for an order that the truth of the matters be deemed admitted.  "The court shall make this order, unless it finds that the party to whom the requests for admission have been directed has served, before the hearing on the motion, a proposed response to the requests for admission that is in substantial compliance" with statutory requirements. (§ 2033.280, subd. (c).)  Even on the limited appellate record wife provided, there is no indication that she ever served a proposed response to the requests for admission.  The court's order deeming the matters admitted was therefore mandatory.

6. ***Wife Has Not Established Error in the Grant of Summary Judgment in Favor of HealthCare Partners***

Following dismissal of the causes of action wife purported to pursue on behalf of the estate, her only cause of action against HealthCare Partners was for wrongful death.  The court granted summary judgment on this cause of action based on the requests for admission it had deemed admitted against wife.

17

On appeal, wife contends this ruling was error. On appeal, we review a summary judgment ruling de novo. (*Jackson v. Lara* (2024) 100 Cal.App.5th 337, 343.) In practical effect, we assume the role of the trial court and apply the same rules and standards governing the trial court's resolution of the motion. (*Ibid.*)

Again, we conclude the appellate record provided is inadequate for this review. Wife provided only the trial court's tentative ruling granting the motion – a document that is irrelevant to our de novo review. Even with the motion itself having been provided by HealthCare Partners, our record still lacks all supporting documents, points and authorities, and briefing on the motion. We cannot review what we do not have.

That said, even on the skeletal summary judgment record we have, it is apparent that the trial court did not err. " '[A] deemed admitted order establishes, by judicial fiat, that a nonresponding party has responded to the requests by admitting the truth of all matters contained therein.' [Citation.] Any matter deemed to have been admitted 'is conclusively established against the party making the admission' . . . ." (*Inzunza v. Naranjo* (2023) 94 Cal.App.5th 736, 742.) It was thus conclusively established that the care and treatment HealthCare Partners rendered was at all times appropriate and that no act or omission on their part caused decedent's death. This justifies judgment against wife on her wrongful death cause of action against HealthCare Partners.

7. *Plaintiffs' Challenge to the Dismissal of Hospital and Hospice Is Untimely*

In their reply brief on appeal, plaintiffs argue that the previous order dismissing their appeal against Hospital and Hospice should be vacated. It is too late to raise that argument.

18

The motions to dismiss of Hospital and Hospice were granted on August 28, 2023.  A partial remittitur, indicating the order of dismissal had become final, issued November 6, 2023.  Three months later, when we no longer have jurisdiction over the action against Hospital and Hospice, plaintiffs attempt to seek reconsideration of the dismissal.  That portion of this matter is simply no longer before us.

8. ***Plaintiffs' Suggestion That No Timely Respondents' Briefs Were Filed Is Belied by the Record***

Finally, plaintiffs argue that neither Dr. Kossuth nor HealthCare Partners filed a timely respondent's brief.  They argue that this is so "according to the Court Clerk of Division Five," but provide no evidence supporting this assertion.

Our record contradicts plaintiffs' assertion.  Their opening brief was filed on March 21, 2023.  Respondents were therefore required to file their briefs within 30 days, unless an extension was granted by stipulation or the presiding justice.  (Cal. Rules of Court, rule 8.212.)  On April 20, 2023, the 30th day, the presiding justice granted Dr. Kossuth an extension to June 20, 2023.  She timely filed her respondent's brief on June 13, 2023.  HealthCare Partners' extension path was more convoluted, but no less valid.  If a party fails to timely file a respondent's brief, the clerk must notify the party and grant an additional 15 days, before any sanction may follow.  (Cal. Rules of Court, rule 8.220(a).)  At no point did such a notice issue to HealthCare Partners, nor did plaintiffs ever move to strike HealthCare Partners' brief as untimely filed.  Their decision to disregard the brief, based solely on their independent belief that it was untimely, is made at their peril.

19

### DISPOSITION

The judgment of dismissal in favor of Dr. Kossuth and the summary judgment in favor of HealthCare Partners are affirmed. Plaintiffs shall pay Dr. Kossuth's and HealthCare Partners' costs on appeal.


LEE, J.*

WE CONCUR:


MOOR, Acting P. J.


KIM, J.

---

* Judge of the San Bernardino County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

20