Filed 6/24/24  N.W. v. Lee CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| N.W.,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>BRANDON LEE,<br><br>        Defendant and Appellant. | A168670<br><br>(San Francisco City & County<br>Super. Ct. No. CCH-23-585623) |

Brandon Lee appeals from the trial court's issuance of a Code of Civil Procedure[1] section 527.6 civil harassment restraining order upon the petition of N.W.[2]  Lee argues the restraining order was issued in error because there was no substantial evidence supporting the conclusion that Lee was the person who sent harassing text messages to N.W.  We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

In April 2023, N.W. petitioned for a civil harassment restraining order against Lee.  The trial court issued a temporary restraining order (TRO) pending a hearing on May 18, 2023.  At the May 18 hearing, the court (Hon.

---

[1]     Further unspecified statutory references are to the Code of Civil Procedure.

[2]     Pursuant to California Rules of Court, rules 8.90, governing "Privacy in opinions," we refer to plaintiff by her initials.  (Cal. Rules of Court, rule 8.90(b)(5).)

Michelle Tong) reissued the TRO and set the matter for a show cause hearing on September 7, 2023. After hearing testimony from N.W. and Lee, the court (Hon. Harry L. Jacobs) issued a restraining order prohibiting Lee from harassing and contacting N.W. and taking any action to obtain her address or location for a period of one year.[3]

Lee immediately appealed the trial court's decision, relying on a settled statement since there was no reporter's transcript of the oral proceedings. (See Cal. Rules of Court, rule 8.137.) In December 2023, the trial court certified Lee's proposed settled statement without alteration or correction as "an accurate summary of the testimony and other evidence that is relevant to the appellant's reasons for the appeal."

In his settled statement, Lee summarized the parties' testimony and evidence as follows. N.W. testified that "a few messages from random numbers started texting her in July and someone was talking to her friend and pointed fingers at [Lee]" even though N.W. "was not sure who those numbers belonged to." N.W. believed Lee was responsible for the harassing text messages because "one of the accounts had a nickname that [Lee] used to call her which is 'Nickle.' " According to Lee, N.W. presented her phone with text messages from the various telephone numbers, including messages "about her personal issues," and "some messages in [K]orean," but Lee maintained that he does not know how to speak, read, or write in Korean.[4]

---

[3]    We glean these procedural facts from the register of actions. The record on appeal does not contain N.W.'s petition, any supporting documentation, the TRO, the reissued TRO, or any of the minute orders of the hearings in the trial court.

[4]    The text messages themselves are not in the record on appeal, and Lee did not quote from or paraphrase the messages in his briefing or in his settled statement. It is unclear from Lee's proposed settled statement whether the text messages were admitted as exhibits during the show cause hearing. On

Lee testified he had no involvement in the harassing text messages and did not know who sent them or where they came from. He apologized to N.W. prior to the May 18 hearing, saying he was simply trying to "protect her from internet creeps who wanted to take advantage of her [but] it blew out of proportion." Lee further testified that he did not know the friend that N.W. referenced in her testimony, who was another person named Brandon that Lee had never met. Lee further explained that "[t]he nickname was actually given to [N.W.] by her sister," and Lee "thought it was a pretty funny nickname so I copied her sister. However, I don't refer [to] [N.W.] as 'Nickle' anymore and I haven't done so ever since we stopped being friends. I am out of her life, she is out of mines [*sic*], therefore I don't have a reason to call her by that name and I actually forgot about that nickname until she brought it up as 'evidence.' " Lee denied that he contacted N.W. after the TRO was reissued and described how he spent the summer between the reissuance of the TRO and the show cause hearing.

In an attachment to his settled statement, Lee claimed that during the May 18, 2023, hearing, Judge Tong "understood that [he] had no intentions of harming or assaulting [N.W.] at all," and that "everything was a misunderstanding between us and that [Judge Tong] wanted us to put everything behind us as old friends that didn't work out." According to Lee, Judge Tong stated that a restraining order would issue only if Lee "was the

page 2 of the Judicial Council form proposed settled statement, Lee checked "No" to the question whether any exhibits were used to support or disprove N.W.'s testimony. However, in another part of the form specifically asking Lee to describe any "[e]xhibits (documents, records, or other materials) relevant to the appeal allowed to be used as evidence," Lee wrote, "The only evidence was [N.W.'s] phone with a few numbers talking to her about her personal issues with someone and some messages in [K]orean."

one who spoke to her," but Lee maintained that he "didn't have any form of contact with [N.W. and] therefore should not be liable[.]"

Lee further maintained that at the September 7, 2023, hearing, Judge Jacobs granted the restraining order based on a finding that Lee " 'was the one who started it' and that unfortunately anyone could be on social media." Lee argued that Judge Tong, not Judge Jacobs, should have presided over the show cause hearing. He also contended the restraining order should be "removed off my public record" because the "order is a mistake" and he does not want potential future employers to know about it.

## DISCUSSION

Under section 527.6, a person who has suffered "harassment" may seek a TRO and an order after hearing prohibiting the harassment. (§ 527.6, subd. (a)(1).) Harassment is defined, in relevant part, as "a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose." (*Id.*, subd. (b)(3).) "The course of conduct must be that which would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner." (*Ibid*.) "At the hearing, the judge shall receive any testimony that is relevant, and may make an independent inquiry. If the judge finds by clear and convincing evidence that unlawful harassment exists, an order shall issue prohibiting the harassment." (*Id.*, subd. (i).)

We review the granting of a civil harassment restraining order under section 527.6 for substantial evidence. (*Duronslet v. Kamps* (2012) 203 Cal.App.4th 717, 725.) Substantial evidence is "evidence of ponderable legal significance, evidence that is reasonable, credible, and of solid value." (*Roddenberry v. Roddenberry* (1996) 44 Cal.App.4th 634, 651.) The testimony

4

of a single witness may constitute substantial evidence to support the trial court's decision. (See *Hope v. California Youth Authority* (2005) 134 Cal.App.4th 577, 589.) We accept as true all evidence tending to establish the correctness of the trial court's findings, resolving every conflict in favor of the judgment. (*Burquet v. Brumbaugh* (2014) 223 Cal.App.4th 1140, 1143.)

Where, as here, the standard of proof requires a party to establish the existence or nonexistence of a fact by clear and convincing evidence (§ 527.6, subd. (i)), substantial evidence review requires the appellate court to determine whether "the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 995–996 (*O.B.*).) But "in making this assessment the appellate court must view the record in the light most favorable to the prevailing party below and give due deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence." (*Id.* at p. 996.)

Moreover, a judgment or order of a trial court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness. (*Association for Los Angeles Deputy Sheriffs v. County of Los Angeles* (2023) 94 Cal.App.5th 764, 776–777 (*County of Los Angeles*).) The appellant has the burden to affirmatively show error on an adequate record on appeal. (See *Osgood v. Landon* (2005) 127 Cal.App.4th 425, 435 (*Osgood*).) Furthermore, " '[i]t is well established that a reviewing court starts with the presumption that the record contains evidence to sustain every finding of fact.' " (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881.) The rules of appellate procedure apply to self-represented litigants. (See *Scholes v. Lambirth Trucking Co.* (2017) 10 Cal.App.5th 590, 595.)

5

In this case, Lee does not dispute that N.W. experienced harassment within the meaning of section 527.6.  Indeed, Lee acknowledges that someone was "harassing [N.W.] and sexually objectifying her" through multiple messages "with sexual assault intentions."  Nor does he contend that N.W. did not suffer substantial emotional distress.[5]  Rather, the sole issue before us is whether the record contains substantial evidence from which a reasonable fact finder could have found it highly probable that Lee was the harasser.  (*O.B., supra*, 9 Cal.5th at pp. 995–996.)

On this score, Lee argues that the trial court's finding was erroneous because during the September 7 hearing, N.W. testified that she did not know the telephone numbers from which the harassing messages were sent, and Judge Jacobs advised her not to make assumptions.  But even so, this did not preclude the court from drawing reasonable inferences about the identity of the harasser from the circumstantial evidence before it; nor does it bar this court from upholding that finding on appeal. (See *Conservatorship of S.A.* (2020) 57 Cal.App.5th 48, 57 [substantial evidence includes circumstantial evidence and reasonable inferences flowing from it].)  We highlight N.W.'s testimony that she suspected Lee's involvement because of the harasser's use of the nickname " 'Nickle,' " and we infer that Judge Jacobs credited this portion of N.W.'s testimony and defer to that credibility finding.  (*O.B.*, *supra*, 9 Cal.5th at p. 996.)  Although Lee denied coming up with the nickname, he admitted he knew about and used it to refer to N.W.  Lee does not contend,

---

[5]     Although Lee attempts to minimize his dispute with N.W. as "childish" and a "misunderstanding" regarding "two college kids bickering about who texted who on the phone," he fails to meaningfully brief why the text messages in question did not constitute harassment, or why they would not have caused a reasonable person to suffer substantial emotional distress. (§ 527.6, subd. (b)(3).)

and the record does not reflect, that the nickname was widely known or used by others in their social circle, and "Nickle" is not such a common variation on N.W.'s name that its use by the harasser is reasonably viewed as the likely product of chance or coincidence. Based on its direct observation of both witnesses' demeanor and testimony, the court was entitled to reject Lee's testimony that he had forgotten about the nickname and had no involvement in the harassment.

Additionally, it appears from the settled statement that the text messages themselves were either admitted as exhibits or viewed from N.W.'s phone during the show cause hearing. (See *ante*, fn. 4.) But because Lee has failed to include the text messages in the appellate record, quote from them, or describe their substance in detail in the settled statement, we have no way of knowing whether the messages contained additional information that may have supported N.W.'s suspicion that Lee was the harasser. Under the applicable rules of court, we must *presume* that any evidence or portion of a proceeding not included in the settled statement supports the appealed-from decision. (Cal. Rules of Court, rule 8.137(d)(2)(A).) Although Lee maintains that some of the messages were in a language he does not speak, he acknowledges that others included information about N.W.'s "personal issues." The inclusion of personal details in the messages could very well have provided additional support for N.W.'s suspicion that the harasser was someone she knew well, and it is undisputed that N.W. and Lee were friends before their falling out. Furthermore, we have no way of knowing whether other details about the text messages, such as the timing in which they were sent, supported N.W.'s suspicions. On this record, and viewing the record in the light most favorable to the decision, we conclude the trial court could reasonably infer that the person who sent the harassing text messages to

7

N.W. was someone who knew about her unique nickname and other "personal" details about her, and that it was highly probable this person was Lee. In short, N.W.'s testimony, along with the text message evidence that presumptively supports it (Cal. Rules of Court, rule 8.137(d)(2)), constituted substantial evidence from which the trial court could reasonably find it highly probable that Lee was the harasser.

Lee's remaining points are unavailing. He suggests it was improper for Judge Jacobs, rather than Judge Tong, to preside over the show cause hearing, but he cites no authority for that proposition. (See *WFG National Title Ins. Co. v. Wells Fargo Bank, N.A.* (2020) 51 Cal.App.5th 881, 894 [court may disregard conclusory arguments not supported by pertinent legal authority].) He further contends that "even Judge Jacobs agrees" the order should have been reversed. Here, Lee appears mistaken about the effect of the trial court's certification of his proposed settled statement. The court merely certified that Lee's proposed settled statement was an accurate account of the arguments and testimony made at the show cause hearing; it was not an acknowledgment of the merits of Lee's appeal. (See *A.G. v. C.S.* (2016) 246 Cal.App.4th 1269, 1282 (*A.G.*) [settled statement is " 'a condensed narrative of the oral proceedings that the appellant believes necessary for the appeal' " and may not capture judge's complete analysis of issues of fact or law].)

In closing, we note some trial courts have ceased providing court reporters in certain civil proceedings, leaving litigants to bear the burden and expense of hiring a private court reporter or else relying on a settled statement to provide an adequate record for appeal. (*Randall v. Mousseau* (2016) 2 Cal.App.5th 929, 933–934.) This case gives us pause with regard to the trial court's decision to certify Lee's proposed settled statement without

8

modification despite the apparent incompleteness of Lee's account of the evidence and testimony presented. (See Cal. Rules of Court, rule 8.137(f)(3) [trial court must review proposed statement and may order new proposed statement or "must" make corrections or modifications "necessary to ensure that it is an accurate summary of the evidence and the testimony" relevant to the points raised on appeal].) In a case such as this where the parties on both sides are self-represented, and the respondent does not submit a response to the appellant's proposed settled statement, it is especially important for the trial court to conduct a meaningful review of the proposed settled statement so that the appellate court is provided with a full and accurate record to understand the nature of the arguments and evidence presented below and the basis for the court's decision.

Nevertheless, in the absence of briefing on the subject, we leave for another day the question whether a trial court must, in addition to ensuring the accuracy of the condensed narrative in a proposed settled statement (see Cal. Rules of Court, rule 8.137(f)(3)), take action to shore up a proposed settled statement that fails to contain all the evidence the court views as supporting its judgment or order. (Cf. Cal. Rules of Court, rule 8.137(d)(2)(A) [establishing presumption that evidence not included in settled statement supports appealed-from judgment or order]; *A.G.*, *supra*, 246 Cal.App.4th at p. 1282 [recognizing settled statement may not capture judge's complete analysis of issues of fact or law].) For now, we apply the well-established principles that all intendments and presumptions are indulged in favor of the correctness of a judgment (*County of Los Angeles*, *supra*, 94 Cal.App.5th at pp. 776–777) and that the appellant bears the burden of affirmatively showing error (see *Osgood*, *supra*, 127 Cal.App.4th at p. 435), and on that basis, affirm the trial court's order.

9

## DISPOSITION

The trial court's order granting N.W.'s petition for a civil harassment restraining order is affirmed.

_____
Fujisaki, J.

WE CONCUR:


_____
Tucher, P.J.


_____
Petrou, J.


*N.W. v. Lee* (A168670)